**The PEOPLE of the State of Colorado, Complainant,**

v.

**F. Owen KENDRICK, Attorney-Respondent.**

**No. 81SA446.**

Supreme Court of Colorado, En Banc.

March 1, 1982.

Linda Donnelly, Disciplinary Prosecutor, Denver, for complainant.

Attorney-respondent not appearing in person or by counsel.

ERICKSON, Justice.

The numerous disciplinary complaints which are the subject of this opinion were brought to obtain redress for flagrant and repeated violations of the Code of Professional Responsibility. The respondent, F. Owen Kendrick, has already been suspended from the practice of law for three years. *People v. Kendrick*, Colo., 619 P.2d 65 (1980). Several of the complaints before us were resolved by the Grievance Committee with a recommendation of disbarment. Disbarment is the only proper sanction. We order that the respondent be disbarred and that his name be stricken from the roll

of attorneys authorized to practice before this court. The respondent is ordered to pay costs in the amount of $1,677.22 to the Clerk of the Supreme Court within six months. He is also ordered to make restitution in accordance with the directions contained in this opinion.

F. Owen Kendrick was admitted to the bar of this court on October 21, 1976. On May 13, 1980, he was given a private censure based upon his neglect of a legal matter entrusted to him and because of his gross negligence in the handling of his clients' legal affairs. On May 22, 1980, the respondent was suspended pursuant to C.R. C.P. 259(F) pending the completion of disciplinary proceedings and, on November 10, 1980, he was suspended by this court for three years as a result of his misappropriation of funds from a law firm where he served as the managing partner. *People v. Kendrick, supra.* In the disciplinary proceeding which culminated in the respondent's suspension, he ignored service of process and refused to appear after he was notified by the disciplinary prosecutor of the nature of the proceedings and the evidence which supported the defalcation claim. At the disciplinary hearing, the disciplinary prosecutor presented clear and convincing evidence that the respondent had misappropriated funds entrusted to him. His conduct violated DR 1–102(A)(4) of the Code of Professional Responsibility, which prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

## I.

Both prior to and subsequent to his suspension, the respondent committed other acts which were unprofessional, dishonest, and deceitful. He has repeatedly accepted retainers and then failed to carry out his legal duties to his client, lied to his clients about the performance of legal work or the status of their cases, imposed delay after delay upon his clients, and has failed to return unearned fees. In addition, the respondent converted trust funds to his own use, wrote checks on accounts containing insufficient funds or on accounts which had

been closed, failed to disclose to his clients the existence of the order suspending him from practice, and left his clients without representation. Moreover, the respondent essentially ignored the entire grievance process and his duties as a lawyer. His entire course of conduct is contrary to the high standards of honesty, justice, and morality which every lawyer is bound to follow.

The respondent was served with process in Louisiana and has offered no evidence of mitigation. The respondent's professional misconduct was clearly and convincingly proven to the Grievance Committee and the findings of fact of the Grievance Committee establish violations of DR 1–102(A)(3) (engaging in illegal conduct involving moral turpitude); DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102 (A)(5) (engaging in conduct that is prejudicial to the administration of justice); DR 1–102(A)(6) (engaging in conduct that adversely reflects on the fitness to practice law); DR 6–101(A)(3) (neglecting a legal matter entrusted to him); DR 7–101(A)(3) (prejudicing or damaging the client during the course of the professional relationship); DR 7–102(A)(5) (knowingly making a false statement of law or fact); and DR 9–102(B)(4) (failing to promptly pay or deliver to a client as requested the funds which the client is entitled to receive). The following specific instances of professional misconduct support the findings and conclusions of the Grievance Committee and the recommendation of disbarment. *See People v. Harfmann*, Colo., 638 P.2d 745 (1981); *People v. Roads*, 180 Colo. 192, 503 P.2d 1024 (1972).

### A.

### *Joseph A. Shea Complaint*

The respondent represented Joseph A. Shea in an eminent domain proceeding in Colorado Springs. The City of Colorado Springs sought to acquire property which was adjacent to a lot owned by Shea, and Shea agreed to facilitate the condemnation by acting as an intermediary between the city and the owner of the adjacent proper-

ty. The respondent agreed to serve as Shea's attorney to prepare contracts and to handle other necessary legal work. He agreed to a fee of 12% of any money left from the funds paid by the city after all expenses of the project were satisfied, and his client guaranteed a minimum payment of thirty dollars per hour, plus his actual expenses. The respondent received $69,-728.56 from the city and was instructed by his client to deposit $55,000 in a construction escrow account, with Shea and the respondent's spouse, who is also a lawyer, as the authorized signators. The balance of $14,728.56 was to be put in a regular savings account where both Shea and the respondent's spouse could withdraw funds. The respondent opened the construction escrow account with $55,000, but contrary to Shea's instructions, $5,600 was deposited into the respondent's personal bank account, and the $9,128.56 balance was put in a regular savings account under the trade name of "Frontier Alley Committee" (FAC). Thereafter, $8,030 was withdrawn from that account based upon the respondent's representation to his wife that they were entitled to the funds.

On September 10, 1979, Shea instructed the respondent to withdraw $10,000 from the savings account maintained by FAC and to invest the sum in a sixty-day certificate of deposit. The respondent reported that he had made the investment in a ninety-day certificate of deposit, but no such investment was ever made. In December 1979, Shea instructed the respondent to obtain a new certificate of deposit at a different bank. The respondent did not make the investment as directed, but nonetheless reported to Shea that his instructions had been followed. After $13,630 was withdrawn from the FAC account for the personal use of the respondent, he replaced $4,000 of the misappropriated funds, leaving a balance of $9,630 which has not been repaid. The respondent had promised Shea on numerous occasions that he would make restitution of the funds which he knowingly misappropriated from FAC, but restitution has not yet been made.

The respondent's conduct in this matter violates DR 1–102(A)(4) and DR 1–102(A)(6) of the Code of Professional Responsibility.

## B.

### Philander K. Ratcliffe Complaint

The respondent was employed by Philander K. Ratcliffe to appear as defense counsel on three misdemeanor charges. The district attorney agreed to dismiss the charges if restitution to the victims was made. The total amount involved was $384.23. The respondent advised the district attorney that sufficient funds for restitution were in his trust account, and that if the victims came to his office, restitution would be made. Based upon the respondent's representation and promise to the court and to the district attorney, the trial court dismissed the charges against Ratcliffe. The district attorney furnished the names and addresses of the victims to the respondent. The respondent was paid $400 by Ratcliffe to make restitution and he made restitution of $200 to one victim, but claimed the balance as a fee for his services. Respondent's conduct in this matter violated DR 1–102(A)(4), DR 1–102(A)(5), DR 1–102(A)(6), DR 7–101(A)(3), and DR 7–102(A)(5) of the Code of Professional Responsibility.

## C.

### Oliver Watson Complaint

Oliver Watson was charged with burglary and sexual assault. The respondent accepted employment as defense counsel and told an investigator for the district attorney's office that Watson had taken and passed a polygraph examination administered by Carl Zona. Shortly thereafter, Zona denied giving a polygraph examination to Watson or ever doing any work for the respondent. When questioned about Zona's reply, the respondent claimed that Zona had told the investigator precisely what he was supposed to, because the respondent did not want Zona disclosing any information about his client. Zona again verified that he had never done any work for the respondent

and had not given Watson a polygraph examination. The respondent's conduct violated DR 1–102(A)(3), DR 1–102(A)(4), DR 1–102(A)(5), and DR 1–102(A)(6) of the Code of Professional Responsibility.

## D.

### Other Complaints

More than a score of additional complaints were filed against the respondent for neglecting legal matters entrusted to him after a fee was paid in violation of DR 6–101(A)(3) of the Code of Professional Responsibility. Each of the charges is supported by clear and convincing evidence, and the respondent has failed to return the fees paid to him by his clients. In addition, in accepting retainer fees in a number of cases, the respondent failed to advise his clients that he had been suspended from the practice of law. The respondent also issued a series of checks to the Clerk of the District Court of El Paso County, and to the Clerk of the District Court of Teller County, for filing fees which were returned because of insufficient funds or because the checking account had been closed. He advised a district judge that the checks would be honored and agreed to pay the filing fees represented by his bad checks, but payment has not been made. In making its findings and conclusions, the Grievance Committee has noted that respondent's conduct reflects a continuous pattern of neglect, delay, misuse or conversion of client funds, and dishonesty which is without parallel in the history of the Grievance Committee.

## II.

We are appalled by the continued instances of unprofessional, egregious, and scurrilous conduct shown by the respondent in the disciplinary complaints before us. A lawyer owes an obligation to his client to act with diligence in handling his clients' legal work. *People v. Bugg*, Colo., 616 P.2d 133 (1980). In our view, the respondent has intentionally and consistently abused the high ethical principles upon which the legal profession is based by neglecting the legal affairs entrusted to him or by handling such affairs with complete disregard of the rights and expectations of his clients. Such crass irresponsibility and callous indifference to his clients are inexcusable. Moreover, the respondent has, on several occasions, chosen to wrongfully enrich himself financially to the detriment of his clients and others. Severe punishment is required when a lawyer disregards his professional obligations and converts his clients' funds to his own use. *People v. Kluver*, 199 Colo. 511, 611 P.2d 971 (1980). *See also People v. McMichael*, 199 Colo. 433, 609 P.2d 633 (1980).

The respondent has shown a marked pattern of professional misconduct which has grown consistently worse from the date he was admitted to the bar, and he has completely ignored the disciplinary process by failing to file answers to the complaints against him and by failing to appear before the hearing panel of the Grievance Committee either in person or by counsel. A license to practice law assures the public that the lawyer who holds the license will provide legal services honestly and without undue delay, in accordance with the highest standards of professional conduct. *People v. Dixon*, Colo., 621 P.2d 322 (1981). The public therefore has a right to expect that one who engages in such egregious professional misconduct shall be disciplined appropriately. *See, e.g., People v. Witt*, Colo., 616 P.2d 139 (1980); *People v. Meldahl*, Colo., 615 P.2d 29 (1980); *People ex rel. Silverman v. Anderson*, Colo., 612 P.2d 94 (1980). *See People v. Radinsky*, 182 Colo. 259, 512 P.2d 627 (1973); *People v. Radinsky*, 176 Colo. 357, 490 P.2d 951 (1971). Our most severe disciplinary sanction is disbarment. Accordingly, the respondent is disbarred.

We order the respondent to pay costs and to forthwith make restitution as follows: (1) he shall pay costs in the amount of $1,677.22 to the Clerk of the Supreme Court within six months of the date of this decision; (2) he shall forthwith make restitution to Joseph A. Shea in the amount of $9,630 with interest at the statutory rate from September 26, 1979 to the date of

payment; and (3) he shall make restitution to the other victims of his unprofessional conduct described herein within six months from the date of this decision. In addition, notice of the disbarment of the respondent shall be promptly sent to the National Disciplinary Data Bank.

The respondent, F. Owen Kendrick, is hereby disbarred, and we direct that his name be stricken from the roll of lawyers authorized to practice before this court.