(No. 38720.—

*In re* JAMES D. REYNOLDS, Attorney, Respondent.

*Opinion filed March 18, 1965.*

WILLIAM BRUCE RICHARDS, of Chicago, for respondent.

RICHARD B. ALLEN, of Chicago, *amicus curiae.*

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is a disciplinary proceeding under Rule 59 of this court in which the Illinois State Bar Association, through its Board of Governors as commissioners of this court, on complaint by the Inquiry Division of the Committee on Grievances of the Illinois State Bar Association inquired into the conduct of James D. Reynolds as an attorney with reference to alleged conduct and practices tending to defeat the administration of justice or to bring the courts and legal profession into disrepute.

The complaint contained twelve counts. Counts I through X (the bankruptcy counts) charged that respondent in his professional capacity represented ten different persons in ten separate voluntary bankruptcy proceedings in the United States District Court for the Southern District of Illinois, in the course of which he wrongfully and unprofessionally made or caused to be made as a part of the bankruptcy petition in each case an affidavit stating that he had "not and will not accept any compensation for his services as such attorney until the filing fee and referee's costs are paid in full", and that said affidavit was false and a fraud upon the court inasmuch as he had at the time of making the affidavit and did thereafter request and receive professional fees before the filing fee and referee's costs were paid. These ten counts were amended at the conclusion of complainant's evidence so that each charged that respondent made affidavits or caused them to be made or consented to their being made by his agents, and that such affidavits were false and a fraud upon the court.

Count XI charged wrongful and unprofessional acts in connection with obtaining fees in a criminal matter.

Count XII charged improper actions in a transaction involving the purchase of real estate in Florida from one Eugene H. Skipper.

Respondent denied all charges of unprofessional conduct and fraud. He contends also that since the actions of respondent charged in count XII did not occur in an at-

torney-client relationship, even if the charges were true, they would not constitute grounds for discipline by this court.

The complainant dismissed count XI and the charges of count X were found not to have been proved.

The evidence on the bankruptcy counts was that respondent handled many bankruptcy cases, most of which were voluntary nonasset cases. In many of these the bankrupt did not have sufficient funds to pay the filing fee. Rule 3 of the Bankruptcy Rules of the United States District Court permitted filing a voluntary petition without the payment of the filing fee if petitioner's attorney made an affidavit that he would receive no fees until the filing fees and referee's costs were paid.

In the voluntary bankruptcy proceedings which are involved in counts I to IX, respondent acted as attorney. In each was filed an "Affidavit of Attorney" purporting to be an affidavit under oath by respondent that "he has not and will not accept compensation for his services as such attorney until the filing fee and referee's costs are paid in full." In each case the name of respondent was signed by Catherine M. Yerby, who was his secretary. She then acknowledged the signature as notary public. Respondent testified he would consult with the clients in a nonasset case, send them home to make a list of creditors, and in a day or two they would return to see his secretary who would prepare the papers and file them. He would not see the people again until the first meeting of creditors before the referee. In the meantime, the clients would pay a certain amount each week into his office and usually after the first meeting of creditors, he would pay the filing fees. The respondent testified regarding his directions and authorizations to his secretary as to signing the affidavits; at one time testifying she had no specific authority, at another that she did, and at another that he probably delegated her that authority.

The record also showed that respondent was indicted in the United States District Court for the Southern District

of Illinois for criminal offenses in knowingly and fraudulently making a false oath in relation to bankruptcy proceedings. The indictment in ten counts was based upon the same cases which were the basis of counts I to X of this proceeding. Five of the counts were dismissed by the government and a nonjury trial on the other five counts resulted in a finding of not guilty, since respondent did not himself make the sworn statements, but they were made in his name by his secretary.

The evidence as to the charges in count XII concerned respondent's negotiations to purchase a hotel of Mr. and Mrs. E. H. Skipper in Florida. The sellers asked a sale price of $100,000, which was to include real estate, furniture, fixtures and inventory, except the stock of liquor used to operate the hotel's bar. Respondent and another, as owners of a corporation, agreed to purchase the hotel for $100,000 with $8,000 down and the remainder evidenced by a purchase money mortgage bearing 5% interest, which mortgage was to be inferior to an existing mortgage. The stock of liquor was to be inventoried and paid for by the corporation separately, but the liquor license was to be included in the purchase price. The transaction appears to have been completed in somewhat of a rush without sellers' attorney, as respondent said he was in a hurry to leave by airplane. Papers were executed and the liquor license was transferred. Upon Mr. Skipper's return to his hotel, he could not find the mortgage for the balance of $92,000. He called respondent in Peoria and talked by telephone on several occasions with him. However, respondent did not provide Skipper with either the original or a new mortgage, although indicating that he might have picked it up by mistake. After several days passed, Skipper went to Peoria and retained an attorney. Skipper and his attorney had several conferences with respondent. The attorney prepared a new mortgage for respondent to sign. Respondent objected that its terms differed from the original under-

standing. The parties then discussed rescinding the sale. Respondent indicated he would have to have some money and expenses if the transaction were rescinded and that he "had Skipper over the barrel." A settlement was worked out whereby respondent received back his investment and some $300-$400 additional. Respondent contended Skipper changed the transaction and this was the reason he did not sign the new papers.

The Hearing Division of the Committee on Grievances, having heard the evidence, made findings (1) that on nine different occasions respondent caused a false affidavit to be made in voluntary bankruptcy proceedings in that he instructed his secretary to make the attorney's affidavit required by rule of court by signing his name and notarizing it and submitting it to the court as his affidavit; (2) that he received attorney's fees from voluntary bankrupts, who were paying filing fees and referee's fees in installments, prior to full payment of such filing fees and referee's fees, contrary to the statements made in his affidavits to the court; (3) that the affidavits were false and constituted a fraud on the court; (4) that he knowingly engaged in such conduct, although he may not have known that fees were paid to his secretary, since it was his duty to see that such payments of his fees were not made, and (5) that while the relation of attorney and client did not exist between respondent and Eugene H. Skipper in the transaction of purchase by respondent or his corporation of the Florida hotel, the conduct of respondent was improper and fraudulent and brings the legal profession into disrepute. The Hearing Division recommended disbarment.

Objections were filed to the report and recommendation and were overruled by the Hearing Division. Thereafter, the Board of Governors, as commissioners of this court under Rule 59, after review of the proceedings and report and recommendations, sustained the objections as to findings (2) and (4), affirmed the order overruling all other

objections and adopted the findings, as modified, as the findings of the board. The board recommended respondent be suspended from the practice of law for one year.

This court has inherent power to regulate admission to the bar of Illinois and to discipline conduct of the attorneys admitted to practice before it. Disciplinary proceedings therefore are original proceedings in this court. The court does not have personnel to conduct investigations and hearings as to such matters and thus has delegated the findings of facts to others. Rule 59 of this court now prescribes a procedure by the bar associations to hold hearings and report findings of fact as commissioners of this court. These reports and the recommendations of the bar associations in such cases are advisory to this court. Nevertheless, the findings are entitled to virtually the same weight as the findings of any initial trier of facts in our judicial system.

Any attempt by an attorney to practice fraud on a court is unprofessional conduct. In the nine bankruptcy cases reported here, it is uncontroverted that the affidavit signed with the name of respondent as an attorney was filed so as to induce the bankruptcy court to accept the filing of the bankruptcy petitions without requiring payment of a filing fee. It appears from the evidence that respondent at least condoned, if he did not actually authorize the making and filing of such affidavits which were false as to his name, if not indeed as to the factual matters therein stated. This action deceived the court as to compliance with its rule. It is clear that the clerk of the court would not have filed the bankruptcy petitions without fees unless the affidavit accompanied them. The court rule would not have been satisfied by an affidavit of respondent's secretary. No doubt the rule required the affidavit of the attorney for the reason that he is an officer of the court. Many cases have been decided by this court as to the effect that the practice of a fraud upon the court by false affidavits is ground for disbarment. *People ex rel. Witherow* v. *Leary,* 84 Ill. 190;

*People ex rel. Healy* v. *Barrios,* 237 Ill. 527, *People ex rel. Chicago Bar Association* v. *Johnson,* 344 Ill. 132.

The action of respondent clearly violates Canon 22 of the Canons of Professional Ethics of the Illinois State Bar Association, which declares: "The conduct of the lawyer * * * should be characterized by candor and fairness. * * * It is unprofessional and dishonorable to deal other than candidly with the facts in taking the statements of witnesses, in drawing affidavits and other documents, and in the presentation of causes. * * * These and all kindred practices are unprofessional and unworthy of an officer of the law charged, as is the lawyer, with the duty of aiding in the administration of justice."

Truly, respondent employed falsity and fraud as a matter of general practice, with full knowledge and intent to defeat the provisions of the local court rule. Respondent's conduct in connection with these affidavits is wholly alien to what the courts and the public are entitled to expect of an attorney. He violates his oath of office when he resorts to deception on the court.

We have considered carefully the evidence and findings as to the "Skipper" count in connection with respondent's actions in the purchase of the Florida hotel. While we do not condone all of his dealings in this matter, there appears considerable conflict in the testimony as to whether the parties had a common understanding of the terms of the purchase and the properties to be covered by the mortgage securing the major portion of the purchase price. Certainly, respondent as an individual dealing in his own private interests could negotiate purchase terms the same as any other individual. The apparent change in terms of the instrument would justify respondent to rescind the sale. Under the evidence, we cannot say that the conduct of respondent in this transaction violated professional standards of the law or tends to defeat the administration of justice.

The acts and conduct of respondent in the bankruptcy

cases require us to adopt the findings of the commissioners on those charges and to take appropriate action. The power to discipline is severe because of the serious consequences which follow. Thus, it must be administered with moderation but as a deterrent of the offense. Respondent therefore is ordered to be suspended from the practice of law for a period of six months.

*Respondent suspended.*