No. 24058.

No. 25024.

THE PEOPLE OF THE STATE OF COLORADO v.
ALBERT ELLIS RADINSKY.
(490 P.2d 951)

Decided November 15, 1971.

358

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, L. James Arthur, Assistant, for The People of the State of Colorado.

SHERMAN, QUINN and SHERMAN, EDWARD H. SHERMAN, for attorney-respondent.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

DISCIPLINARY proceedings were instituted against the respondent, Albert Ellis Radinsky, who was licensed to practice law in Colorado on May 3, 1937. The respondent, following full hearings before the Grievance Committee of this Court, was directed to show cause why he should not be indefinitely suspended. He responded and objected to suspension. After reviewing the voluminous files which comprise the record that the Grievance Committee considered in reaching its conclusion of misconduct, we are of the opinion that the respondent, Albert Ellis Radinsky, should be indefinitely suspended from the practice of law in the State of Colorado.

Two very serious complaints were heard by the Grievance Committee of this Court. Both complaints were resolved against the respondent. The Committee recommended public censure in both instances. The Committee stated that if we had acted on the first complaint and had publicly censured the respondent, the Committee would have recommended suspension as to the second grievance.

Under C.R.C.P. 256, this Court can accept the recommendation of the Grievance Committee or may impose such other discipline as may be proper under the circumstances.

The foundation of the legal profession is honor. If acts of the type that the respondent has committed are not promptly and severely punished, the public will not have reason to trust lawyers that maintain the high standards of our profession. This Court has the inherent power, apart from rule or statute, as well as the duty,

to suspend an attorney whose conduct tends to obstruct or impede the administration of justice. *Gould v. State,* 99 Fla. 662, 127 So. 309, 69 A.L.R. 699 (1930). Acts and conduct on the part of an attorney which establish that he is incapable of being trusted, when coupled with acts of dishonesty and deceit, render that person unworthy of public confidence and recognition by the courts. *In re Wilson,* 391 S.W.2d 914 (Mo. 1965).

In taking his oath of office, the respondent agreed to abide by the following standard, among others:

"I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the Judge or jury by any artifice or false statement of fact or law."

C.R.C.P. 220.

▮ Our most sacred duty is to maintain the integrity of the law profession by disciplining lawyers who indulge in practices which are designed to perpetrate a fraud on the courts. *See Note, The Imposition of Disciplinary Measures for the Misconduct of Attorneys,* 52 Col.L.Rev. 1041 (1951). Since a lawyer is an officer of the court, we cannot tolerate or allow fraud by a lawyer to go unpunished. To declare acts of the type which are before us to be unprofessional conduct would be to use the mildest of language. *In re Reynolds,* 32 Ill.2d 331, 205 N.E.2d 429 (1965); *People ex rel. Colorado Bar Association v. McCann,* 80 Colo. 220, 249 P. 1093 (1926).

## I.

The broad statements of principle that have preceded our factual statement were necessary in the light of the respondent's opprobrious conduct to show our reason for condemning his acts in the strongest language.

▮ Directing our attention to the first Grievance Committee Report, we find that in six different cases, the respondent perpetrated a fraud upon the court in his use of a general assignment for the benefit of creditors. In all six cases, the respondent served as the as-

signee and in that capacity obtained an assignment of all of the debtor's property. Purportedly, the assets were received for the general benefit of all creditors. An analysis of the documents that were filed with the court, pursuant to the applicable provisions of the Colorado Revised Statutes, reveals that they were either false or were at best misleading. The Grievance Committee found that the respondent either prepared the documents in question or had full knowledge of their contents. Based upon the false and misleading nature of these documents and the respondent's conduct in connection with these so-called assignments for the benefit of creditors, the Committee concluded that the respondent had knowingly misled the various courts which were involved.

Apart from his position as a lawyer, under the statute, the respondent was an officer of the court and responsible for an accounting to the court, the debtors, and to the debtor's creditors. *See* 1965 Perm. Supp., C.R.S. 1963, 11-1-6; C.R.S. 1963, 11-1-9, 10, 16, 27. From the record, and with the applicable statutory provisions before us, it is clear that the respondent failed to faithfully discharge his duties to the detriment of everyone who was involved, except the respondent. By filing false documents, he perpetrated a fraud upon the court. He violated his duties to the debtor and to the creditors of the debtor by charging the debtor service fees far in excess of those authorized by statute. He compounded his transgression by thereafter deducting his exorbitant fees from the assets of the debtor before he made distribution for the benefit of creditors. *See* C.R.S. 1963, 11-1-12. Moreover, he completely subverted the underlying purpose of the statute by failing to pool all of the debtor's assets, so that they could be distributed to all creditors without preference.

No good purpose would be served in spelling out in further detail the acts that the Grievance Committee set out in its findings and conclusions. Suffice it to say that all funds obtained by the respondent as an assignee were

commingled and deposited in his trust account. Notes were acquired by him in this same scheme which bore no relationship to the actual obligations of the debtor; but which served the purpose of deceiving and misleading creditors. Inventories filed with the court by the respondent, or at his instance, were not accurate.

The Grievance Committee had before it substantial, clear, convincing, and satisfactory evidence to establish the violation of our Canons of Professional Ethics. C.R.S. 1963, Vol. I, Appendix B. Without doubt, the respondent's conduct was inconsistent with Canon 22, which requires that the conduct of a lawyer before the court be characterized by candor and fairness. Under the Canon, it is unprofessional conduct and dishonorable to deal other than candidly with the facts in drawing affidavits and other documents. *In re Reynolds,* 32 Ill.2d 331, 205 N.E.2d 429 (1965); *In re Pennica,* 36 N.J. 401, 177 A.2d 721 (1962); *In re Hanson,* 258 Minn. 231, 103 N.W.2d 863 (1960); *In re Keegan,* 31 F.2d 129 (C.C. Colo. 1887).

The respondent also failed to comply with the requirements of Canon 38, as interpreted by the American Bar Association Ethics Committee. In Decision 276, the Ethics Committee held that where a court fixes a fee as reasonable, it is improper to make an additional charge. *See* Drinker, *Legal Ethics,* 298. Despite this admonition, the respondent made a uniform practice of imposing charges upon those that he was serving as an assignee for the benefit of creditors that exceeded the statutory standards.

## II.

Of equal magnitude is the respondent's attempt to tamper with a jury. The evidence which unfolded before the Grievance Comittee established that the respondent, prior to the trial of a personal injury case involving a so-called "whiplash injury," caused his investigator to contact by telephone members of the jury panel to ascertain what their attitude was about insur-

ance companies, large verdicts, and whiplash injuries. Unbeknown to the prosepective jurors, each of the telephone conversations was recorded for the respondent's use. Canon 23, at the time the acts complained of occurred, provided: ·

"[A] lawyer must never converse privately with jurors about the case; and both before and during the trial he should avoid communicating with them, even as to matters foreign to the case."

Jury tampering was established by uncontradicted evidence. Nothing could justify the respondent's acts which occurred while he was an officer of the court.

It is, therefore, ordered that the respondent be indefinitely suspended from the practice of law in Colorado and that he pay costs in the amount of $1,331.34 into the registry of this Court within sixty days.

MR. CHIEF JUSTICE PRINGLE not participating.