**The PEOPLE of the State of Colorado, Complainant,**

v.

**Jack H. DWYER, Attorney-Respondent.**

**No. 82SA9.**

Supreme Court of Colorado,
En Banc.

Nov. 1, 1982.

Linda A. Donnelly, Disciplinary Prosecutor, Denver, for complainant.

Jack H. Dwyer, Denver, pro se.

ERICKSON, Justice.

The respondent, Jack H. Dwyer, was the subject of a number of disciplinary complaints which have now culminated in his disbarment pursuant to his stipulation, agreement and admission of misconduct. On July 28, 1981, he was suspended by this Court from practicing law and thereafter notified his clients of his suspension pursuant to C.R.C.P. 255. The disciplinary pro-

ceedings were concluded by the respondent's admission of misconduct and his admission that disbarment was the proper sanction for his acts. The respondent also acknowledged that he has been advised that he may not seek readmission for eight years. C.R.C.P. 241.22(A). The stipulation also includes an agreement to make restitution before any application for readmission is made. In addition, the Grievance Committee recommended that the respondent be disbarred. We accept the recommendation of the Grievance Committee and approve the stipulation and agreement, and order that the respondent, Jack H. Dwyer, be disbarred and that his name be stricken from the roll of attorneys authorized to practice before this Court.

The respondent was admitted to the bar of the Supreme Court of Colorado on September 11, 1957, and is registered as an attorney upon the records of the Colorado Supreme Court (Registration No. 4639). He has practiced law continuously since the time of his admission and has served as a municipal judge in Thornton, Colorado. On December 17, 1964, he was privately censured for neglecting a legal matter entrusted to him. DR 6–101(A)(3). He also received a private censure on June 23, 1980, for again violating DR 6–101(A)(3) by neglecting to perform legal services after he was paid a retainer and agreed to do the work. He now admits that he committed the following acts which constitute grounds for disbarment.

1. *The O'Reilly Estate*

Respondent was appointed conservator for Ms. Charlotte M. O'Reilly on February 18, 1975. Ms. O'Reilly died on April 8, 1979. On June 5, 1981, the date respondent was removed as conservator, the Inventory for the O'Reilly estate and an Intermediate Report for the period of February 18, 1975 to June 5, 1981, were filed. The Intermediate Report of the estate revealed a total net deficiency of $28,661.57. A later amendment to the Intermediate Report reduced the total net deficiency to $28,214.94. Of the funds unaccounted for, $13,704.65 disap-

peared from the estate on March 31, 1981, when respondent closed an estate savings account in that amount. The Intermediate Report also revealed that respondent was paid $11,229.00 without court approval as attorney fees for serving as conservator. Moreover, respondent did not prepare the state and fiduciary tax returns.

Respondent admits that he violated DR 1–102(A)(4), (5), and (6); DR 2–106(A); DR 6–101(A)(2) and (3); DR 7–101(A)(2) and (3); and DR 9–102(B)(3) and (4) by ignoring his fiduciary duties and misappropriating funds of the O'Reilly estate.

## 2. The Nugent Estate

Catherine A. Nugent died on September 6, 1979. Respondent was appointed personal representative on November 6, 1979. Respondent was removed as personal representative on April 28, 1981, and later surcharged $6,000. During the time he was personal representative, respondent did not prepare an inventory and he did not prepare state or federal tax returns. Nonetheless, while respondent was personal representative, he advised an heir of Catherine A. Nugent that he was ready to file a final report. Before being appointed personal representative, respondent advised the heirs that he would charge no fee for serving as personal representative and his total attorney fee would be $950. Yet, during his tenure as personal representative, respondent paid himself $3,725 in attorney fees, despite the fact that he never prepared an inventory for the estate, did not file either the Colorado Inheritance Tax Return or the Federal Estate Tax Return; nor did he take any steps to transfer stock and bonds owned by the decedent to her heirs; nor did he redeem a bond that had been called for; nor did he redeem coupons attached to other bonds; nor did he deposit dividend checks into the estate account. At one point, respondent overdrew the estate bank account. As a result, the estate account was closed by the bank. Because of respondent's failure to file the state tax returns, the estate was assessed $1,093.02 in interest and a penalty. Approximately $486 in dividends were unaccounted for.

The respondent admits that his acts and misconduct breached DR 1–102(A)(4), (5), and (6); DR 2–106(A); DR 6–101(A)(2) and (3); DR 7–101(A)(2) and (3); DR 7–102(A)(5); and DR 9–102(B)(4) and that funds of the Nugent estate were misappropriated.

## 3. The Schmitz Estate

Carl H. Schmitz died on July 29, 1979. Respondent was appointed personal representative on September 4, 1979. Respondent resigned as personal representative on September 29, 1980. The successor personal representative filed the Inventory for the estate in February of 1981. While respondent was personal representative, no state tax return was filed, resulting in an assessment for interest and a penalty totaling $150. While he was personal representative, respondent paid himself $500 for attorney fees.

Respondent admits that his acts and misconduct violated DR 1–102(A)(5) and (6); DR 2–106(A); DR 6–101(A)(2) and (3); DR 7–101(A)(2) and (3); and DR 9–102(B)(4).

## 4. The McKeever Estate

After Robert B. McKeever died, his wife, Lorraine McKeever, was appointed personal representative. She hired respondent and paid him a retainer of $100. Respondent, however, failed to advise her that she needed to file a Colorado Inheritance Tax Statement. The estate was assessed a penalty and interest, which respondent paid. Mrs. McKeever, the personal representative, eventually was able to close the estate with the probate court's assistance. Before the estate was closed, Mrs. McKeever testified in the state tax matter, initiated by the state to collect the tax and assess a penalty, after a series of wholly unsuccessful attempts to reach respondent to obtain his assistance as counsel.

Respondent admits that his misconduct constituted disobedience to DR 1–102(A)(5) and (6); DR 6–101(A)(2) and (3); and DR 7–101(A)(2) and (3).

### 5. The Complaint of Barbara S. Van Hook

Barbara S. Van Hook retained respondent in March 1979 to represent her in certain post-decree matters in connection with her dissolution of marriage. She paid respondent a retainer of $300. In February of 1980, after numerous telephone calls to respondent which were not returned, Mrs. Van Hook spoke with respondent who admitted that he had done no work on her case. In March 1980, Mrs. Van Hook discharged respondent, demanded a refund of her retainer and filed a complaint with the Grievance Committee. In April 1980, respondent issued a check to Mrs. Van Hook in the amount of $300, but the check was returned for insufficient funds. Mrs. Van Hook's later attempts to contact respondent were without success. Likewise, Investigative Counsel for the Grievance Committee failed to obtain respondent's cooperation in the earlier investigation of Mrs. Van Hook's complaint.

Respondent admits that his misconduct disregards DR 1-102(A)(5); DR 2-110(A)(2); DR 6-101(A)(3); and DR 9-102(B)(4).

### 6. The Complaint of Tim D. Price and Edward D. Price

In September of 1979, the Prices (Gil, Pat, Kerrie, Ed, and Tim) retained respondent to represent them in legal proceedings over an alleged debt owed by them. At the outset, respondent received $800 from the Prices and was aware of the Prices' counterclaim for fraud against the plaintiff in the action on the debt. Plaintiff filed suit against the Prices and plaintiff's motion for default was scheduled for hearing on November 21, 1979. Respondent requested a postponement of the hearing, but lied to Pat and Kerrie Price by telling them that the plaintiff had requested the postponement. After agreeing to accept service of process on behalf of Ed Price, respondent failed to file a timely answer. Later, respondent allowed a default judgment to be entered against Tim Price. No responsive pleadings were filed on behalf of the Prices until November 11, 1980. Ultimately, respondent was asked to withdraw, but he agreed to do so only if he was released from any criminal or civil liability. Respondent also failed to respond to the informal complaint filed by the Prices or to the Grievance Committee's request for an explanation and response.

Respondent admits his misconduct violates C.R.C.P. 241.6 and DR 1-102(A)(1), (4) and (5); DR 6-101(A)(3); DR 6-102(A); and DR 7-101(A)(1) and (3).

### 7. The Slager Estate

Respondent was appointed as conservator for Edward Slager, a protected person. Respondent posted a corporate surety bond in the amount of $50,000. The surety on the bond is the Fidelity and Deposit Company of Maryland. Respondent admits that when called to account as conservator, he was unable to account for funds of the estate in the total amount of $49,221. The bonding company has acknowledged liability in this amount. Respondent has been surcharged by the district court in the amount of $49,211.

Respondent admits that he dishonored DR 1-102(a)(4) and (6) and DR 9-102(B)(4) by his fraudulent acts in handling the funds of the Slager estate.

In addition to admitting his misconduct, respondent acknowledges that he does not suffer from the type of mental and physical disability contemplated by C.R.C.P. 241.19, which could be invoked in mitigation of his unprofessional conduct. He was mentally competent at the time the defalcations occurred. He has not stipulated as to a date that repayment will be made, but he has agreed to make restitution in the following amounts to the following persons:

1. Estate of Charlotte M. O'Reilly: $39,443.94
2. Estate of Catherine A. Nugent: $6,000.00
3. Estate of Carl H. Schmitz: $650.06
4. Mrs. Lorraine McKeever: $100.00
5. Mrs. Barbara S. Van Hook: $300.00
6. Gil, Pat, Kerri, Ed, and Tim Price: $800.00
7. Fidelity and Deposit Company of Maryland: $49,221.00

The offenses committed by the respondent are contrary to the high standards of honesty, justice, and morality expected of lawyers. *People v. James,* 176 Colo. 299, 490 P.2d 291 (1971); *People v. Radinsky,* 176 Colo. 357, 490 P.2d 951 (1971). His recognition of his own misconduct and his plan to make restitution is admirable, but his acts cannot be condoned and require a severe sanction. *People v. Pacheco,* 198 Colo. 455, 608 P.2d 333 (1979). His professional misdeeds may, in part, be the product of his abuse of alcohol which he recognized to be one of his shortcomings, and which he worked hard to overcome.

A number of the respondent's clients and the estates he probated have undergone serious financial losses by reason of the respondent's violation of his fiduciary duties as a lawyer, and as a conservator and as a personal representative for the estates described in this opinion. Disbarment is the harshest discipline that we can impose on a lawyer and we now order that the respondent be disbarred.

Accordingly, the Clerk of the Supreme Court is ordered to strike the respondent's name from the roll of lawyers authorized to practice before this Court. The respondent shall not be eligible to apply for readmission until the expiration of eight years, and then only if he has made restitution in accordance with the stipulation set forth in this opinion.

HODGES, C.J., and QUINN, J., do not participate.