Peter S. RAZATOS, Plaintiff-Appellant,

v.

The COLORADO SUPREME COURT, P.V. Hodges, R.B. Lee, W.H. Erickson, L.D. Rovira, G.E. Lohr, J.E. Dubofsky, and J.R. Quinn, in their official capacities as Justices of the Colorado Supreme Court, Defendants-Appellees.

No. 82–2516.

United States Court of Appeals, Tenth Circuit.

Oct. 29, 1984.

Jonathon B. Chase, South Royalton, Vt. (Albert T. Frantz, Lakewood, Colo., with him on the brief), for plaintiff-appellant.

Ruthanne Gartland, Asst. Atty. Gen. for the State of Colo., Denver, Colo. (Duane

Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., and Jill A. Gross, Asst. Atty. Gen., on the brief), Denver, Colo., for defendants-appellees.

Before SETH, SEYMOUR, and ANDERSON,* Circuit Judges.

SEYMOUR, Circuit Judge.

Peter Razatos, an attorney suspended from practice by the Colorado Supreme Court, brought this action under 42 U.S.C. § 1983 (1982). He seeks a declaratory judgment that the Colorado procedure for disciplining attorneys violates the Due Process Clause of the Fourteenth Amendment, and a hearing to clear his name. He asserts that under the Colorado attorney discipline scheme, the Colorado Supreme Court makes the final fact determination as to whether an attorney should be disciplined. He argues that this scheme violates the Fourteenth Amendment because due process requires that a personal hearing be held before the final decision-maker. The district court granted defendants' motion to dismiss for lack of subject matter jurisdiction. *Razatos v. Colorado Supreme Court*, 549 F.Supp. 798 (D.Colo.1982). It held alternatively that even if it had jurisdiction, the Colorado procedure does not violate due process. We disagree on the jurisdictional issue, but we affirm the judgment on the merits.

## I.

## BACKGROUND

### A. *Attorney Disciplinary Proceedings in Colorado*

The Colorado Supreme Court has adopted rules governing the procedures by which disciplinary proceedings may be brought against attorneys in Colorado. At all times relevant to this case, those rules were embodied in Rules 241 through 259 of the Colorado Rules of Civil Procedure, 7A

---

* Honorable Aldon J. Anderson, United States District Judge for the District of Utah, sitting by designation.

Colo.Rev.Stat. (1973).[1] The rules establish a nineteen-member Grievance Committee, which is divided into two Hearings Panels of nine members each, *see* Rule 243, with the remaining member appointed as Grievance Committee Chairman. *See* Rule 242. When a formal complaint is brought against an attorney, it is assigned to one of the nine-member Hearings Panels. The Grievance Committee Chairman then appoints a three-member Hearings Committee consisting of at least one member of the panel assigned to that complaint. *See* Rule 249. The committee conducts a formal hearing during which witnesses are sworn, testimony is taken, and a complete record is made. *Id.* At the conclusion of the hearing, the committee submits to the panel a report signed by a majority of the committee setting forth its findings and recommendations. *See* Rule 251. If approved by a majority of the panel, the findings and recommendations of the committee are adopted in the panel's report. When the panel finds that the charges are proven, it recommends appropriate disciplinary action to the Colorado Supreme Court. *Id.* When the charges are unproven, the panel is required to dismiss the complaint, and the matter is terminated unless the complainant petitions the Colorado Supreme Court to review the dismissal. *Id.*

In cases where the panel decides to recommend discipline, it is required to file its report, findings, and recommendations with the Colorado Supreme Court. *See* Rule 252. The respondent attorney is provided an opportunity to file exceptions to the panel's report, after which the parties may designate portions of the record and file briefs. The matter stands submitted to the court on the briefs and on the designated record. The court must then determine the matter promptly and impose discipline or dismiss the complaint. *Id.*

## B. *Razatos' Case*

■ Upon review of a trial court's order of dismissal, we must assume that the facts alleged in the complaint are true. *Poolaw v. City of Anadarko*, 660 F.2d 459, 461 (10th Cir.1981); *Bryan v. Stillwater Board of Realtors*, 578 F.2d 1319, 1321 (10th Cir.1977). Razatos' complaint, as amended, states as follows:

"In 1975, plaintiff Razatos, who was a licensed real estate broker as well as an attorney, was approached by Mrs. Dorothy Lee Smith, who inquired of him if he knew of any bars for sale. Mr. Razatos thereafter assisted Mrs. Smith in the purchase of a bar then called the Littleton Lounge. Mrs. Smith eventually charged Mr. Razatos with professional misconduct in the course of these transactions and these charges ultimately led to plaintiff Razatos' suspension from the practice of law for a period of three years, the conduct complained of in this action. The critical issue central to the disciplinary proceedings was whether plaintiff Razatos was representing Mrs. Smith in these transactions as her attorney, as she claimed, or merely acting in his capacity as real estate broker, as he claimed. The credibility of several witnesses, including Mrs. Smith and Mr. Razatos, was a critical factor in making the final determination of Mr. Razatos' role in these transactions."

Rec., vol. I, at 7.

The charges against Mr. Razatos were first heard by a three-member Hearings Committee. All three members of the committee were also on the nine-member Hearings Panel assigned to the complaint. After a formal hearing during which witnesses testified and other evidence was produced, the committee found Razatos guilty and recommended suspension from practice for three years. It submitted its findings and recommendations to the nine-member panel, a majority of which approved them. The findings and recommendations of the committee thus became the report of the panel. The panel then referred its report to the Colorado Supreme Court. The court,

---

1. The rules were repealed effective January 1, 1982, and were replaced by Rules 241.1 through 241.25. 7A Colo.Rev.Stat., Colo.R.Civ.P. 241.1– 241.25 (Supp.1983). However, we note that the hearing procedure remains substantially similar.

upon a review of the record, was persuaded "that the material findings of fact reflected in [the panel's] report are supported by clear and convincing evidence and that the recommendations for discipline are appropriate." *People v. Razatos,* 636 P.2d 666, 667 (Colo.1981). Accordingly, the court adopted the panel's recommendations and suspended Razatos for three years. Razatos appealed the court's decision to the United States Supreme Court, which denied the appeal. *Razatos v. Colorado,* 455 U.S. 930, 102, S.Ct. 1415, 71 L.Ed.2d 639 (1982).

Razatos thereafter commenced this section 1983 action in federal district court against the Colorado Supreme Court and its justices. In the prior state proceedings, Razatos had contended that Rules 249 and 251 of the Colorado Rules of Civil Procedure denied him due process because they permitted the nine-member panel to make the final determination of facts when only three of its members (those appointed to the Hearings Committee) actually observed the witnesses, and the remaining six members allegedly did not have a transcript of the committee hearing. The State took the position that under Colorado law, the Colorado Supreme Court was the final fact-finder in disciplinary proceedings, rather than the nine-member Hearings Panel as asserted by Razatos. The Colorado Supreme Court did not address this argument in its opinion.

In his section 1983 claim, Razatos accepts the position of the State that the Colorado Supreme Court is the final fact-finder under the rules. Relying on *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), he asserts that Rule 252, as so construed, violates due process. Razatos claims that in cases where credibility of witnesses is crucial to the decision, the final arbiters of fact must see the witnesses and have an opportunity themselves to assess credibility in order to satisfy due process. The district court dismissed the complaint for lack of subject matter jurisdiction and, alternatively, on the ground that Rule 252 does not violate due process.

## II.

### JURISDICTION

▆ A United States District Court has no authority to review final judgments of a state court in judicial proceedings. Such review resides exclusively in the United States Supreme Court. *See* 28 U.S.C. § 1257 (1982); *see also Phelps v. Kansas Supreme Court,* 662 F.2d 649, 651 (10th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982); *Younger v. Colorado State Board of Law Examiners,* 625 F.2d 372, 375 (10th Cir.1980). Therefore, to the extent Razatos sought review in the district court of the judicial decision of the Colorado Supreme Court, the district court properly refused to hear his complaint.

The Supreme Court has recognized a distinction, however, between a disciplined attorney's challenge to his particular disciplinary proceedings and a generalized constitutional attack on the state's rules and regulations governing discipline. In *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Court said that in the latter kind of case, the district court is not required to review a state court judicial decision but rather to assess the validity of a rule promulgated in a non-judicial proceeding.

> "We have recognized that state supreme courts may act in a nonjudicial capacity in promulgating rules regulating the bar.... Challenges to the constitutionality of state bar rules, therefore, do not necessarily require a United States District Court to review a final state-court judgment in a judicial proceeding. Instead, the District Court may simply be asked to assess the validity of a rule promulgated in a nonjudicial proceeding. If this is the case, the District Court is not reviewing a state-court judicial decision. In this regard, 28 U.S.C. § 1257 does not act as a bar to the District Court's consideration of the case and because the proceedings giving rise to the rule are nonjudicial the policies prohibit-

ing United States District Court review of final state-court judgments are not implicated. United States District Courts, therefore, have subject-matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case." *Feldman,* 460 U.S. at 485–86, 103 S.Ct. at 1316–17 (citations omitted); *see also, Younger,* 625 F.2d at 376.

District courts are thus required to distinguish between general challenges to state bar rules as promulgated and challenges to state court decisions in particular cases. The distinction is often difficult to draw. The Supreme Court in *Feldman* stated that "[i]f the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to a state bar, then the District Court is in essence being called upon to review the state court decision." *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1315 n. 16. Although this language by itself does not provide district courts with a bright line rule, a review of the constitutional challenges over which the Supreme Court permitted jurisdiction in *Feldman* convinces us that jurisdiction over Razatos' claim exists in this case.

Feldman did not attend law school but successfully completed an alternative method of becoming a lawyer in Virginia by following a structured program of study in a practicing attorney's office. He was admitted to the Virginia Bar. However, he was later denied admission to the District of Columbia Bar when the committee on admissions refused to waive the requirement of law school graduation. This decision was upheld by the District of Columbia Court of Appeals, which is the highest court of the district. Feldman thereupon filed a complaint in federal court, alleging that the District of Columbia Court of Appeals' refusal to admit him to the bar violated the Fifth Amendment in five respects.

*See Feldman,* 460 U.S. at 469 n. 3, 103 S.Ct. at 1308 n. 3.

Two of the five allegations required that the district court scrutinize not only the challenged rule itself, but the District of Columbia Court of Appeals' application of the rule to Feldman. In these two allegations, Feldman first claimed that the court of appeals acted arbitrarily and capriciously in denying his petition for waiver because it refused to consider his individual qualifications. Second, he argued that the court acted unreasonably and discriminatorily because it failed to waive the rule in his particular case even though it allegedly had waived the rule in the past under similar circumstances. Although they arguably presented constitutional claims, these two challenges to the state bar rule were held to be "inextricably intertwined" with the state court decision. *Id.* at 486–87, 103 S.Ct. at 1313–14. In order to resolve them, the district court would have to go beyond mere review of the state rule *as promulgated,* to an examination of the rule *as applied* by the state court to the particular factual circumstances of Feldman's case. Consequently, the district court would be required "to review a final judicial decision of the highest court of a jurisdiction in a particular case." *Id.* at 486, 103 S.Ct. at 1313. For this reason, the Court concluded that the federal district court did not have jurisdiction over these two elements of Feldman's claim.

The remaining three allegations in Feldman's complaint "involve[d] a general attack on the constitutionality of [the state rule]," *id.* at 487, 103 S.Ct. at 1314, and the Court held that the district court had subject matter jurisdiction over these elements of Feldman's complaint. In these permitted claims, Feldman contended that the state rule was unconstitutional because (1) it created an irrebuttable presumption that only graduates of accredited law schools are fit to practice law; (2) it discriminated against those who have obtained equivalent legal training by other means; and (3) it impermissibly delegated to the ABA the power of the District of Columbia Court of

Appeals to regulate the bar. In order to evaluate these claims, the district court did not have to review the particular judicial decision of the District of Columbia Court of Appeals in Feldman's case. It only had to look at the rule itself as promulgated.

In the case at bar, Razatos contends that under the Colorado rules, the Colorado Supreme Court is the final arbiter of fact in disciplinary proceedings. He argues from that premise that Colo.R.Civ.P. 252 therefore violates the Due Process Clause because it fails to require the final arbiter of fact to observe the witnesses personally in cases where credibility is a critical factor. In order to evaluate this claim, the district court need not review the decision of the Colorado Supreme Court. It need only look at Rule 252 as promulgated, and as construed by state case law. Razatos framed his constitutional challenge in such a way as to allow district court subject matter jurisdiction. We therefore reverse the district court's decision that it lacked jurisdiction.

### III.

### RAZATOS' DUE PROCESS CLAIM

■ The district court held alternatively that "even if plaintiff has framed his claim so that it raises a federal question, this Court ... concludes that Rule 252 does not constitute a denial of due process." 549 F.Supp. at 801–802. We agree with this conclusion.

To analyze Razatos' claim, we must examine the nature of the disciplinary proceedings at issue. Under this scheme the Colorado Supreme Court exercises "original and exclusive jurisdiction" over the licensing and discipline of all attorneys in the state. Colo.R.Civ.P. 241 C. *See Doe v. Pringle,* 550 F.2d 596, 599 (10th Cir.1976), *cert. denied,* 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977). In exercising this jurisdiction, the supreme court promulgated the rules which established the Grievance Committee and the procedure that Razatos

attacks. It is clear from this structure that the Hearings Panel serves as an adjunct to the supreme court. In this capacity, the Hearings Panel facilitates disciplinary proceedings by conducting hearings, issuing findings of facts, and proposing sanctions to the supreme court. These recommendations are advisory only and the supreme court retains the power to increase or decrease the sanction or to dismiss the complaint. *See* Rule 252 B(3) and (6); *see also People v. Mattox,* 639 P.2d 397, 399 (Colo. 1982); *People v. Berge,* 620 P.2d 23, 28 (Colo.1980); *People v. Susman,* 196 Colo. 458, 587 P.2d 782, 786 (1978). This includes the power to review independently the findings of facts and to modify or reverse them if they are not supported by clear and convincing evidence. *See, e.g., Susman,* 587 P.2d at 786 n. 4 (citing ABA, *Standards for Lawyer Disciplinary and Disability Proceedings,* Comment to § 8.48 (Tent.Draft 1978)); *cf. People v. Razatos,* 636 P.2d 666, 671 (Colo.1981); *Berge,* 620 P.2d at 28.

Razatos does not challenge this power but asserts that the failure of the rules to provide an opportunity for a de novo hearing before the court necessarily means that the court may not conduct such hearings. Although we have found no case in which the court has chosen to hold a de novo hearing, we cannot say that the court does not have the power to do so. As noted above, the court exercises original and exclusive jurisdiction over the entire proceeding. This plenary power is consistent with the court's "inherent power, apart from rule or statute, as well as the duty" to discipline attorneys. *People v. Radinsky,* 176 Colo. 357, 490 P.2d 951, 952 (1971). *See Susman,* 587 P.2d at 786. It includes the discretionary right to hold de novo hearings whenever necessary to provide due process.[2]

Razatos claims that if the Colorado Supreme Court has the discretionary power to hold de novo hearings, its failure to provide one when issues of credibility are crucial

---

**2.** In fact, the amended rules expressly recognize that the supreme court's power in disciplinary proceedings is plenary. *See* Colo.R.Civ.P. 241.-15(c) (Supp.1983).

violates an accused attorney's right to have the final decision-maker actually hear the challenged testimony. *See Morgan v. United States*, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936). The United States Supreme Court faced a similar issue in *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). There, the Court upheld a provision of the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(B) (1982), which permitted a district court to refer a suppression motion to a magistrate, and authorized the district court to decide the motion based on the record developed before the magistrate, including the magistrate's proposed findings of fact and recommendations. The Court determined that, even when the motion involved contested credibility assessments and was dispositive of the case, a de novo hearing before the district court was required neither statutorily nor constitutionally.[3]

In deciding that the statute did not violate Raddatz's right to procedural due process, the Court balanced the three factors enunciated in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976): "(a) the private interests implicated; (b) the risk of an erroneous determination by reason of the process accorded and the probable value of added procedural safeguards; and (c) the public interest and administrative burdens, including costs that the additional procedures would involve." *Raddatz*, 447 U.S. at 677, 100 S.Ct. at 2413. *See Rosewitz v. Latting*, 689 F.2d 175, 177 (10th Cir.1982).

 Razatos asserts an important liberty interest. It is clear that attorney discipline, although designed to protect the public, necessarily imposes a punishment or penalty on a lawyer that entitles him to procedural due process. *In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1968). Moreover, since these proceedings are "quasi-criminal" in nature, *id.* at 551, 88 S.Ct. at 1226, *see Phelps*, 662

F.2d at 653 (McKay, J., dissenting), and deprive an attorney of the right to earn a livelihood, "an analogy to the criminal law is appropriate." *Id.* Nevertheless, as noted by the Colorado Supreme Court in *People v. Harfmann*, 638 P.2d 745 (1981), the due process rights of an attorney in a disciplinary proceeding "do not extend so far as to guarantee the full panoply of rights afforded to an accused in a criminal case." *Id.* at 747. Recognizing that disciplinary proceedings are *sui generis*, the *Harfmann* court refused to extend the exclusionary rule to protect a lawyer charged in a disciplinary complaint. *Id.; see ABA Standards* at § 1.2 *quoted in Harfmann*, 638 P.2d at 748.

In *Raddatz*, the Supreme Court acknowledged that the suppression hearing in question involved contested credibility assessments and would be dispositive of the case. *See Raddatz*, 447 U.S. at 673, 100 S.Ct. at 2411. Nevertheless, the Court noted that "the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself." *Id.* at 679, 100 S.Ct. at 2414. Comparing a hearing before a magistrate to the finding of a special master or administrative hearing officer, *id.* at 680, 100 S.Ct. at 2414, the Court concluded that the process due at a suppression hearing could be less elaborate than would be necessary at a trial. *Id.* at 679, 100 S.Ct. at 2414. Although here the challenged disciplinary proceedings are definitely judicial rather than administrative in nature, *see Doe*, 550 F.2d at 599; *cf. Feldman*, 460 U.S. at 479, 103 S.Ct. at 1308; *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 433–34, 102 S.Ct. 2515, 2522, 73 L.Ed.2d 116 (1982), we believe that an attorney's due process interests in a "quasi-criminal" disciplinary proceeding weigh less than those of a criminal defendant at trial. Accordingly, the process due at an attorney disciplinary hearing may be less

---

**3.** Raddatz based his constitutional challenges on the Due Process Clause of the Fifth Amendment and on Article III.

elaborate than that afforded a defendant at trial.

We next consider the risk of an erroneous determination and the probable value of additional safeguards, remembering that "the practical concern for accurate results ... is the focus of the Due Process Clause." *Raddatz*, 447 U.S. at 684, 100 S.Ct. at 2416 (Blackmun, J., concurring). Here, the possible unreliability of a credibility assessment forms the crux of Razatos' claim. The Colorado Supreme Court accepted without modification the Hearings Panel's findings of fact which were based on the conflicting testimony of the complainant and Razatos.[4] While *Raddatz* involved similar dispositive credibility assessments, Razatos seeks to distinguish his situation on the grounds that a criminal defendant in a suppression hearing has a second chance to suppress the evidence at trial. Findings of fact in the Colorado disciplinary proceedings are, however, reviewed not once but twice. After the Hearings Committee makes a determination, its recommendations are adopted by the Hearing Panel which then files its report with the supreme court. *See* Rule 251 A. At that time the attorney facing charges may file exceptions to the recommended findings of fact and proposed sanctions, certify relevant contested portions of the hearing transcript to the court, and extensively brief the issues for the court. *See* Rule 252. The exceptions serve to alert the court to any problems of doubtful credibility. We believe that this kind of scrutiny actually enhances the reliability of the findings. *See Raddatz*, 447 U.S. at 684, 100 S.Ct. at 2416 (Blackmun, J., concurring).

Moreover, as established above, the supreme court retains the discretion to order a de novo hearing when credibility determinations appear questionable. This plenary authority further extends to ensure the impartiality of the Hearings Panel since its members serve only at the discretion of the court.[5] *See id.* at 685, 100 S.Ct. at 2417.

Finally, a disciplinary proceeding requires clear and convincing evidence to sustain a finding of fact. *See* Rule 251 A. Razatos asserts that this fact indicates a weightier liberty interest than that at stake in *Raddatz*, where the suppression hearing required only a preponderance of the evidence. We agree, and we believe that the clear and convincing evidence test functions to safeguard that interest.

The last factors we must consider are the governmental interests at stake and the burden posed by additional safeguards. As stated by the Colorado Supreme Court in *Harfmann*, 638 P.2d at 747, "the court's primary duty [in disciplinary proceedings] is to protect the public and the legal profession from unscrupulous lawyers." Moreover, "[t]he interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'" *Feldman*, 460 U.S. at 484 n. 16, 103 S.Ct. at 1316 n. 16, (quoting *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572 (1975)). *See also Middlesex County Ethics Com-*

---

**4.** We recognize that the opportunity to hear and observe witnesses may be crucial in the appraisal of testimony, *see Wingo v. Wedding*, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974), yet "its importance diminishes when facts are developed and inferences ... drawn without reference to credibility." *Mildner v. Gulotta*, 405 F.Supp. 182, 195 (E.D.N.Y.1975), *aff'd*, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976). "[A] disciplinary hearing is not a full-blown trial, but an inquest—a gathering of facts concerning the *conduct* of an attorney, a subject more likely to be illuminated by the evidence of the attorney's own acts than by what is said or not said by someone else." *Id.* Although we may not examine the nature of the contested testimony in

this case, *see Feldman*, 460 U.S. at 486–87, 103 S.Ct. at 1317–18, we note that a true "swearing contest," with no objective facts to bolster the credibility of one side or the other, is exceptionally rare. *See Raddatz*, 447 U.S. at 687 & n*, 100 S.Ct. at 2418 & n* (Powell, J., concurring in part and dissenting in part).

**5.** Justice Blackmun marshalled these factors to reject Raddatz's Article III challenge. These elements similarly support the reliability of the disciplinary proceeding at issue. Moreover, an attorney in a disciplinary proceeding is heard by his peers, a group that is likely to understand the difficult situations an attorney may face.

*mittee,* 457 U.S. at 434–35, 102 S.Ct. at 2522.

Razatos urges that the requirement of a de novo hearing in instances where credibility of the witnesses is dispositive would not pose a significant burden for the Colorado Supreme Court. Yet we are reluctant to impose even this requirement in light of the substantial safeguards that currently exist. To do so would frustrate in part the purpose of the adjunct structure, which plainly was designed to free the supreme court from the burden of developing the entire record for adjudication itself. *See Raddatz,* 447 U.S. at 676 n. 3, 100 S.Ct. at 2412 n. 3.

Our decision is limited to the situation presented by this case. Here, the Colorado Supreme Court evaluated the recommended findings of fact of the Hearings Panel, found them supported by clear and convincing evidence, and adopted them. We do not reach the question whether due process would have required a de novo hearing if the court had rejected or modified findings of fact based on contested credibility assessments.[6] *See Raddatz,* 447 U.S. at 681 n. 7, 100 S.Ct. at 2415 n. 7. We hold only that the Colorado attorney disciplinary scheme affords sufficient procedural safeguards to alert the supreme court to instances when it should exercise its discretion to conduct a de novo hearing and view the witnesses itself. *See id.* at 680–81, 100 S.Ct. at 2414–15.

The judgment is affirmed.

---

**6.** We note that if the supreme court *rejected* a finding of fact as unsupported by clear and convincing evidence, the charges might in fact be dropped or sanctions reduced. Presumably, an attorney would not seek a hearing for review of that finding.