**Carmen R. STANFIELD**

v.

**Betty W. HORN, et al.**

**No. 3–88–0168.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Jan. 9, 1989.

---

**1488**

Carmen R. Stanfield, Nashville, Tenn., pro se.

William E. Young, Office of the State Atty. Gen., Nashville, Tenn., for defendants.

## MEMORANDUM

HIGGINS, District Judge.

On February 25, 1988, the plaintiff, Carmen R. Stanfield, a black female, filed this action against the defendants, Betty W. Horn, Administrator of the Board of Law Examiners of Tennessee; Charles W. Burson, President of the Board of Law Examiners of Tennessee; Lowry F. Kline, Vice-President of the Board of Law Examiners of Tennessee; and H. Lee Barfield, II, Secretary of the Board of Law Examiners of Tennessee, alleging that the defendants violated the Due Process and Equal Protection provisions of the Fourteenth Amendment to the United States Constitution and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, in their denial of her application for licensure to practice law, in violation of 42 U.S.C. § 1983. Ms. Stanfield challenges the Supreme Court rule which provides that the sole remedy afforded an unsuccessful applicant on the bar examination is the right to reexamination. Ms. Stanfield also challenges the Board's policy not to discuss or review with any applicant the responses and results of such applicant's examination. Accordingly, Ms. Stanfield seeks a declaratory judgment that Tennessee Supreme Court Rule 7, Article 13, Section 13.02 and Article 14, Section 14.04, which establish these policies are unconstitutional. In addition, Ms. Stanfield alleges that she provided nine (9) out of twelve (12) correct answers on the essay portion of the examination and 175 out of 200 correct answers on the multistate portion of the examination and seeks an order directing "the recovery of the plaintiff's test scores of nine (9) out of twelve (12) correct answers on the essay portion and 175 out of 200 correct answers on the multistate on the February, 1987, Tennessee bar examination" and "the certification and license of the plaintiff as an attorney-at-law in the state of Tennessee board on the plaintiff's passing test scores on the February, 1987, Tennessee bar examination." Ms. Stanfield seeks damages against the defendants in the amount of $20,000,025.00, including $10,000,025.00 in compensatory damages and $10,000,000.00 in punitive damages. Ms. Stanfield also seeks attorney's fees and costs.

On March 12, 1987, the defendants filed a motion to dismiss on the grounds that the Court lacked subject matter jurisdiction over the plaintiff's claims and that the plaintiff failed to state a claim for which relief could be granted.

By an order entered March 30, 1988, the defendants' motion to dismiss was referred to the Magistrate pursuant to 28 U.S.C. § 636(b)(1)(B). On September 30, 1988, the Magistrate filed his Report and Recommendation (Report). The Magistrate recommended that the defendants' motion to dismiss be granted and that the plaintiff's complaint be dismissed for lack of subject matter jurisdiction.

On October 17, 1988, the plaintiff filed objections to the Magistrate's Report. In an order entered November 18, 1988, the Court found that the plaintiff's objections contained scandalous accusations against the Magistrate and struck the plaintiff's objections 704 F.Supp. 1486. On December 1, 1988, the plaintiff refiled her objections after deleting the accusations against the Magistrate.[1] On December 15, 1988, the

---

1. However, on the same date, the plaintiff filed "objections to the Court's 'order and memorandum' of November 18, 1988." In her objections to the Court's order, the plaintiff reasserts those arguments and accusations against the Magistrate which the Court found to be scandalous in

defendants filed a response to the plaintiff's objections.

The Court has reviewed the Magistrate's Report *de novo* as required by 28 U.S.C. § 636(b)(1)(C). For the reasons set forth below, the plaintiff's objections to the Magistrate's Report are overruled. The Magistrate's Report is adopted and the plaintiff's complaint is dismissed.

## I.

In considering a motion to dismiss, the Court must accept as true all factual allegations in the complaint. Accordingly, the facts have been set forth as alleged in the plaintiff's complaint.

On February 25, 1987, Ms. Stanfield arrived at Tennessee State University to take the two-day Tennessee bar examination. On the first day, the multistate portion of the examination was administered, and on the second day the essay portion of the examination was administered. Ms. Stanfield alleges that on the first day of the examination, February 25, 1987, she was the first person in a line containing approximately ten (10) persons of the 229 people who took the February 1987 bar examination. Ms. Stanfield further alleges that a Board employee, who had a list of the February 1987 applicants, demanded that Ms. Stanfield produce identification with her photograph, name, race and sex. According to Ms. Stanfield, this Board employee:

> ... carefully observed the plaintiff's name as Carmen R. Stanfield on the plaintiff's identification card, (c) carefully observed the plaintiff's face, color and sex on the plaintiff's identification card as a black and a female, (d) carefully compared the plaintiff's photo showing the plaintiff's race and sex as a black and a female with the plaintiff's physical appearance as a black and a female, (e) carefully noted the exactness between the plaintiff's photo showing the plaintiff's race and sex as a black and a female, (f) carefully compared the plaintiff's name on the plaintiff's identifica-

tion card showing Carmen R. Stanfield with the plaintiff's name on the roster [of] Tennessee bar candidates showing Carmen R. Stanfield located among the names bearing the "S" series towards the end of the page, (f) [sic] deliberately, willfully and intentionally decided and acted in a nervous, trembling and covering-up manner to mark, and did mark, some identification near the plaintiff's name noting the race and sex of the plaintiff which gave the plaintiff not only reason to wonder at the nervous, trembling and weird behavior of the defendants in nervously covering-up and writing the identification mark which the defendants wrote near the plaintiff's name, but also reason to suspect that the defendants had some adverse ulterior motive against the plaintiff....

By a letter dated April 11, 1987, the Board of Law Examiners notified Ms. Stanfield that she was not successful on the February 25th and 26th bar examination. She was further informed that she would "be notified in writing of [her] essay grades by question and multistate scores by subject." The letter also informed Ms. Stanfield that "there is no provision ... for review of examination papers by the applicant." Finally, Ms. Stanfield was advised of the date of the next bar examination. A notice of intent to retake the examination was included. By a memorandum dated April 11, 1987, Ms. Stanfield was informed that "upon written request addressed to the administrator, the Board will furnish any unsuccessful applicant a photocopy of each of such applicant's essay examination which did not receive a passing grade." Ms. Stanfield was further informed that it was the practice of the Board not to discuss or review with any applicant the result of any applicant's examination or responses of an applicant to any essay question.

On April 14, 1987, Ms. Stanfield wrote to the Board of Law Examiners and requested the Board to produce documentary evidence that she had failed the bar examina-

---

its order of November 18, 1988. In the Court's opinion, Ms. Stanfield's action in filing her "ob-

jections" to this Court's order clearly borders on contempt.

tion. Ms. Stanfield also tendered a check for $25.00 with a signed note of intent to retake the bar examination.

On April 17, 1987, Ms. Stanfield filed a complaint with the Board, alleging that the defendants violated her civil rights. Then, on April 23, 1987, Ms. Stanfield sent the Board of Law Examiners notice of her intent to file a complaint with the United States Civil Rights Commission. On the same date, Ms. Stanfield filed a complaint with the United States Civil Rights Commission. The United States Civil Rights Commission forwarded Ms. Stanfield's complaint to the United States Department of Education. The Department of Education refused to investigate Ms. Stanfield's complaint.

By a letter dated April 22, 1987, the Board of Law Examiners advised Ms. Stanfield that she passed eight (8) of the twelve (12) essay questions and 123 out of 200 questions on the multistate examination.[2]

Shortly thereafter, on April 29, 1987, Ms. Stanfield requested that the Board return her $25.00 fee since the Board failed to comply with her request to prove that she had not earned a passing test score on the bar examination.

Ms. Stanfield further contends that on May 13, 1987, the defendant Betty Horn informed her by letter that the Board would increase her test scores from eight (8) to nine (9) correct answers on the essay portion "provided that the plaintiff without any objective evidence in advance agree that the plaintiff earned no passing scores on the multistate portion of the February, 1987, Tennessee Bar Examination." According to Ms. Stanfield, she declined Ms. Horn's offer and filed this action.

## II.

The plaintiff objects to the Magistrate's finding that the Court lacks subject matter jurisdiction over the plaintiff's action and contends that the Magistrate misinterpreted the law and its application to this action. The Court has carefully reviewed the record and finds that the Magistrate cor-

rectly interpreted the law and its application to this action.

The Supreme Court has recognized that there are two types of claims that are brought by unsuccessful bar applicants in the federal courts: "The first is a constitutional challenge to the state's general rules and regulations governing admission; the second is a claim based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission." *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 485, 103 S.Ct. 1303, 1316, 75 L.Ed. 2d 206 (1983) (quoting *Doe v. Pringle,* 550 F.2d 596, 597 (10th Cir.1976). In *Feldman,* the Supreme Court held that the district courts have subject matter jurisdiction over the first type of claim—general challenges to state bar rules promulgated by state courts in nonjudicial proceedings—but do not have jurisdiction over the second type of claim—challenges to state court decisions in particular cases arising out of judicial proceeding. The Supreme Court emphasized that the district courts do not have jurisdiction over the second type of claim even if the complaint alleges that the state court's action was unconstitutional.

The Courts have recognized that the distinction between claims about state bar rules and claims that a state court has unlawfully denied a particular applicant admission is often difficult to draw. *Razatos v. Colorado Supreme Court,* 746 F.2d 1429 (10th Cir.1984) *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985). *Nordgren v. Hafter,* 789 F.2d 334 (5th Cir. 1986). Therefore, in *Feldman, supra,* the Supreme Court noted:

> If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the District Court is in essence being called upon to review the state court decision. This the District Court may not do.

*Feldman,* 460 U.S. at 483–84, n. 16, 103 S.Ct. at 1315, n. 16, 75 L.Ed.2d at 223, n. 16.

**2.** These scores are insufficient to pass the bar    examination.

Accordingly, in order to determine whether this Court has subject matter jurisdiction over this action, the Court must determine whether Ms. Stanfield's claims present a general constitutional challenge to the bar admission rules or are "inextricably intertwined" with the Board's denial of Ms. Stanfield's application for admission to the Tennessee bar.

The Court recognizes that Ms. Stanfield challenges the constitutionality of Tennessee Supreme Court Rule 7, Article 13, Section 13.02 and Article 14, Section 14.04. However, in the Court's view, the plaintiff's constitutional claim is inextricably intertwined with her challenge to the Board's denial of her application for admission to the bar.

The plaintiff's primary contention is that she satisfactorily passed the Tennessee bar. Moreover, the primary relief the plaintiff requests is that the Court grant the plaintiff a judgment against the defendants "for recovery of the plaintiff's test scores on nine (9) out of twelve (12) correct answers on the essay and 175 out of 200 correct answers on the multistate portion of the February, 1987, Tennessee bar examination" and that the Court grant the plaintiff a judgment against the defendants "for the certification and license of the plaintiff as an attorney-at-law in the state of Tennessee based on the plaintiff's passing test scores on the February, 1987, bar examination." Clearly, therefore, the primary thrust of the plaintiff's action is the Board's denial of her application for admission to the bar.

The Board, in administering the bar examination, acts on behalf of and is regulated by the Tennessee Supreme Court, and the Court retains full authority to determine if a person should be licensed and admitted to practice as an attorney. Tenn. Code Ann. §§ 23-1-103 and 23-1-104(b). Accordingly, in administering the Court's rules by denying Ms. Stanfield admission to the bar for failure to pass the Tennessee bar examination as required, the Board of Law Examiners acted in a judicial capacity within the meaning of *Feldman, supra.* Accordingly, Ms. Stanfield's claim is a chal-

lenge to a state court decision to deny her admission to the bar and is beyond this Court's subject matter jurisdiction. Because Ms. Stanfield attacks the manner in which the state rules were applied to her application for admission to the bar, her remedy, if any, is only available through the Tennessee courts and then by appeal to the United States Supreme Court. *Feldman, supra.*

For the reasons set forth above, this action is beyond this Court's subject matter jurisdiction and must be dismissed. Accordingly, the plaintiff's objections to the Magistrate's Report are overruled. The Magistrate's Report is adopted and approved and the defendants' motion to dismiss is granted.

An appropriate order will be entered.