Arlene NORDGREN, Plaintiff,

v.

Jerome HAFTER, Chairman, Mississippi Board of Bar Admissions and the Mississippi Bar of Bar Admissions: David R. Smith, William Joel Blass, Bennie Turner, Grady F. Tollison, Jr., T.J. Lowe, Jr., William S. Moore, W.D. Brown, Jr., Catherine Baber, Defendants.

Civ. A. No. E84–0130(L).

United States District Court, S.D. Mississippi, E.D.

Aug. 27, 1985.

Arlene Nordgren, pro se.

Stephen J. Kirchmayer, John T. Kitchens, Asst. Attys. Gen., Jackson, Miss., for defendants.

## MEMORANDUM OPINION

TOM S. LEE, District Judge.

This action is brought by the plaintiff, Arlene Nordgren, pro se, against Jerome Hafter, Chairman of the Mississippi Board of Bar Admissions,[1] the individual members of the Board and Catherine Baber,

1. The Mississippi Board of Bar Admissions is sometimes hereinafter referred to as the "Board".

2. Pursuant to a joint motion to dismiss and an agreed order of dismissal entered on February 8, 1985, thirty-one of the original thirty-three defendants were dismissed from this action by the court.

Executive Secretary of the Board,[2] pursuant to 42. U.S.C. § 1983 and 28 U.S.C. § 1343. Plaintiff's suit is based upon her being denied the opportunity to take the Mississippi Bar examination because of her failure to possess a law degree from a law school approved or accredited by the Section on Legal Education of the American Bar Association. (ABA). The plaintiff asserts that she is qualified to sit for the bar exam and alleges that the denial of her application by the Board and the requirement of ABA accreditation give rise to a variety of constitutional claims and a violation of the Sherman Antitrust Act. She has further alleged that the defendants, in denying her application, have committed certain torts including trespass to chattel, conversion, misrepresentation and fraud. Currently pending before the court are defendant's motion to dismiss or, in the alternative, for summary judgment and plaintiff's application for review, motion for summary judgment/declaratory judgment and motion for declaratory judgment.

The plaintiff, a legal resident of the State of California, currently resides in Meridian, Mississippi with her husband, a United States Naval Officer stationed at the Meridian Naval Air Station. She holds a bachelor's degree from the University of Southern California and is a graduate of National University School of Law, a non-ABA-accredited law school.[3] The defendants include members and an employee of the Mississippi Board of Bar Admissions. The Board of Bar Admissions was created by the legislature and is composed of nine individuals appointed by the Justices of the Supreme Court of Mississippi. Miss.Code Ann. § 73–3–2(3) (Supp.1984). While the power to admit persons to practice law in the State of Mississippi is vested exclusive-

3. Apparently, the plaintiff also attended Western State University College of Law in San Diego, California for three years but later transferred to and graduated from National University School of Law. Complaint at 3.

ly in the State Supreme Court, Miss.Code Ann. § 73–3–2(1), the Board has the authority to promulgate rules necessary for the administration of its duties subject to the approval of the Chief Justice of the State Supreme Court. Miss.Code Ann. § 73–3–2(3). The primary function of the Board is to inquire into the qualifications, legal training and character and fitness of those persons seeking to practice law in Mississippi, and then either certify or not certify such individuals as meeting the qualifications for admission to practice law as set out in Miss.Code Ann. § 73–3–2.

On July 19, 1983, plaintiff sent an application along with check for the required $325.00 application fee to the Board of Bar Admissions. Mississippi, like many other states, requires that applicants be graduates of a law school provisionally or fully approved by the ABA. Miss.Code Ann. § 73–3–2(2)(a). Because the plaintiff's application revealed that she had not graduated from an ABA-accredited law school, it was not docketed and her check was not deposited in the state treasury. In January 1984, plaintiff was informed that her application had not been processed and that her check had been returned to her. She never received the actual check but later did receive a photocopy of the check which showed it to be torn in several places, presumably by someone working in the office of the Board of Bar Admissions. In a letter dated February 7, 1984, from defendant Hafter to plaintiff's attorney, J.L. Pritchard, Hafter stated that if plaintiff desired to proceed further with her application, she would have to send to the Board's office a new application fee together with any additional material to be considered. He further advised that if she decided to proceed, her application fee would be deposited and would not be refundable. On February 13, 1984, in accordance with Hafter's letter, the plaintiff sent a second check to the Board, in effect asking that

her application be considered. On February 27, 1984, after polling the members of the Board, Hafter, as Chairman of the Mississippi Board of Bar Admissions, entered an order denying the plaintiff's application and stating:

> The Board finds that applicant has not submitted satisfactory evidence of compliance with the qualifications for admission and in particular that applicant does not satisfy the requirements of Miss. Code 1972 § 73–3–2(2) in that applicant has not completed a general course of study in a law school which is provisionally or fully approved in the section on legal education on admission to the American Bar Association.

On September 10, 1984, plaintiff filed suit challenging the Board's action in denying her application and the general constitutionality of the ABA-accreditation requirement. Her complaint requests that she be granted the "diploma privilege" [4] or, in the alternative, that she be allowed to take the bar exam under the court's supervision. She also asks that the court hold that graduates from non-ABA-accredited law schools which maintain a six-year integrated pre-law and law curriculum are eligible to take the Mississippi bar exam. Plaintiff further requests this court to rule that the 1983 amendment to Miss.Code Ann. § 73–3–2 is unconstitutional. She lastly asks that she be given a proper forum to adjudicate what she has termed violations of the ABA Canons of Ethics.

## JURISDICTION

The plaintiff, in her brief in opposition to the defendant's motion, states that this court has jurisdiction to hear this matter pursuant to *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Because almost every court considering cases involving bar admissions or disciplinary pro-

---

4. The "diploma privilege" referred to by the plaintiff is provided for in Miss.Code Ann. § 73–3–2(4) (Supp.1984), which states that applicants presently or previously enrolled at the University of Mississippi School of Law as of November 1, 1981, shall be admitted to practice upon graduation and are not required to take and pass the bar exam provided that such applicants graduate prior to November 1, 1984.

ceedings decided since *Feldman* has found it necessary to examine closely a plaintiff's allegations and the court's subject matter jurisdiction in light of that decision, this court will also consider the jurisdiction question. *Thomas v. Kadish*, 748 F.2d 276 (5th Cir.1984); *Razatos v. Colorado Supreme Court*, 746 F.2d 1429 (10th Cir. 1984); *Lowrie v. Goldenhersh*, 716 F.2d 401 (7th Cir.1983); *Wood v. Orange County*, 715 F.2d 1543 (11th Cir.1983); *Howell v. State Bar of Texas*, 710 F.2d 1075 (5th Cir.1983); *Rogers v. Supreme Court of Virginia*, 590 F.Supp. 102 (E.D.Va.1984); *Solomon v. Emanuelson*, 586 F.Supp. 280 (D.Conn.1984); *Rosenfeld v. Clark*, 586 F.Supp. 1332 (D.Vt.1984); *Levanti v. Tippen*, 585 F.Supp. 499 (S.D.Cal.1984); *Zimmerman v. Grievance Committee*, 585 F.Supp. 29 (N.D.N.Y.1983); *Mattas v. Supreme Court of Pennsylvania*, 576 F.Supp. 1178 (W.D.Pa.1983).

In *Feldman*, two applicants for admission to the District of Columbia Bar, Feldman and Hickey, petitioned the District of Columbia Circuit Court of Appeals seeking waivers of the bar admission rule requiring graduation from a law school approved by the ABA. The court denied their petitions and they each filed suit in the United States District Court for the District of Columbia challenging the denials of their waiver petitions and the constitutionality of the bar admission rule. The district court dismissed both complaints for lack of subject matter jurisdiction, holding the waiver proceedings to be judicial in nature and, in regard to Feldman's case, stating that if it were to "assume jurisdiction ... of this law suit, it would find itself in the unsupportable position of reviewing an order of a jurisdiction's highest court." 460 U.S. at 470, 103 S.Ct. at 1308.[5] On appeal the United States Court of Appeals for the District of Columbia Circuit reversed and remanded, holding that the waiver proceed-

ings were not judicial acts and that consideration of the constitutional claims by the district court was not foreclosed.[6]

The Supreme Court vacated and remanded the cases for further proceedings, holding that district courts have jurisdiction over general constitutional challenges to state bar rules promulgated by state courts in non-judicial proceedings. The Court also held that the waiver proceedings in the District of Columbia Court of Appeals were judicial in nature and that the district court would not have jurisdiction to review a decision of a state court in such a proceeding even if the plaintiff alleges that the state court's action was unconstitutional. The Court, citing *Doe v. Pringle*, 550 F.2d 596 (10th Cir.1976), and emphasizing the distinction between general challenges to state bar admission rules and claims that a state court has unlawfully denied a particular applicant admission, quoted the following from that opinion:

The United States District Court, in denying [the plaintiff] relief, declared that there is a subtle but fundamental distinction between two types of claims which a frustrated bar applicant might bring to federal court: The first is a constitutional challenge to the state's general rules and regulations governing admission; the second is a claim, based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission. The Court held that while federal courts do exercise jurisdiction over many constitutional claims which attack the state's power to license attorneys involving challenges to either the rule-making authority or the administration of the rules, ... *such is not true where review of a state court's adjudication of a particular application is sought.* The Court ruled that the latter claim may be heard, if at all, exclusively

---

5. Under current provisions of federal law, the District of Columbia Court of Appeals corresponds to a state supreme court, and its judgments, like those of a state supreme court, are directly reviewable only by the United States Supreme Court.

6. The cases of *Feldman* and *Hickey* were not consolidated but were considered in the same opinion by the United States Court of Appeals for the District of Columbia Circuit. *Feldman v. Gardner*, 661 F.2d 1295 (D.C.Cir.1981).

by the Supreme Court of the United States. *Id.*, at 597 (emphasis in original). 460 U.S. at 485, 103 S.Ct. at 1316.

The Supreme Court, applying this standard to the plaintiffs' complaints, found that plaintiffs had alleged both types of claims and that the district court had no jurisdiction over the allegations regarding the specific action taken on the plaintiffs' waiver petitions before the District of Columbia Court of Appeals. Specifically, the plaintiffs had alleged that the Court of Appeals acted arbitrarily and capriciously in denying their petitions for waiver and unreasonably and discriminatorily in denying their petitions in view of its former policy of granting waivers to graduates of other unaccredited law schools. The Court found these allegations to be "inextricably intertwined," 460 U.S. at 486, 103 S.Ct. at 1317, with the decisions to deny plaintiffs' petitions and that, because they would require the district court to review a decision of the highest court of a jurisdiction, the district court did not have jurisdiction over those elements of the complaints. The Court, however, found that the remaining allegations involved a general attack on the constitutionality of the rule and to that extent the district court did have subject matter jurisdiction.

While plaintiff's complaint in this case is at times difficult to interpret, the court, giving the complaint its most liberal construction, concludes that plaintiff has raised both types of claims discussed in *Feldman.* In Counts I, II(a) and II(b) A. of the complaint, plaintiff alleges that defendants acted arbitrarily, capriciously and unreasonably in denying her the right to take the bar exam, that they deprived her of this right without due process, and that they deprived her of her rights while acting under color of state law. As in *Feldman,* the complaint also presents general constitutional challenges which this court has jurisdiction to consider. The plaintiff requests not only specific relief with regard to her application and right to take the bar exam but also general declaratory relief holding the statute in question unconstitu-

tional and declaring graduates from non-ABA-approved law schools eligible to take the Mississippi bar exam. *See Brown v. Board of Bar Examiners of Nevada,* 623 F.2d 605 (9th Cir.1980) (court examined plaintiff's prayer for relief in attempting to characterize nature of plaintiff's claims). The court having determined that the complaint includes challenges concerning the specific denial of plaintiff's application, it therefore becomes necessary to consider whether that denial was judicial in nature and the plaintiff's allegations concerning the denial beyond this court's jurisdiction.

In this case, unlike in *Feldman,* the decision to deny plaintiff's application to take the bar exam was made by a state board, the Board of Bar Admissions, and not by a court. A similar situation confronted the Fifth Circuit Court of Appeals in *Thomas v. Kadish,* 748 F.2d 276 (5th Cir.1984). In that case, the plaintiff filed suit in federal district court challenging the action of the Texas Board of Law Examiners in denying his application based on his alleged emotional and mental unfitness. The Fifth Circuit noted that the Board was appointed by the State Supreme Court, acted under its direction and administered rules, procedures and standards for admissions as provided by the court. Thus, the court found that, in denying the plaintiff's application, the Board was exercising authority on behalf of the court. The Fifth Circuit stated that "the function of the present Board of Law Examiners 'may be analogized to the function of a special master' in taking actions of an 'essentially judicial nature.'" 748 F.2d at 282, quoting *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 434 n. 13, 102 S.Ct. 2515, 2522 n. 13, 73 L.Ed.2d 116 (1982). Thomas had not mounted a general attack on the constitutionality of any rule of the Texas Bar Admission, and, based upon the holding of the Supreme Court in *Feldman,* the Fifth Circuit affirmed the dismissal by the district court for lack of subject matter jurisdiction.

The Mississippi Board of Bar Admissions is similar in structure to the Texas

Board of Law Examiners discussed above. As stated previously, the Board of Bar Admissions is comprised of nine individuals appointed by the Justices of the State Supreme Court. It was created by the legislature and has the authority to promulgate rules subject to the approval of the Chief Justice of the Supreme Court. As in Texas, the exclusive power to admit individuals to the practice of law in the State of Mississippi is vested in the State Supreme Court. Miss.Code Ann. § 73–3–2(1). The Board in this case, in an order dated February 27, 1984, formally denied the plaintiff's application for admission based upon her failure to meet the statutory qualification requiring graduation from an ABA-approved law school. It is clear that, just as in *Thomas v. Kadish*, the Board's action in denying the plaintiff's application is essentially judicial in nature. *See also Richardson v. McFadden*, 563 F.2d 1130, 1132 (4th Cir. 1977) (Hall, J., concurring), *cert. denied* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978); *Woodward v. Virginia Board of Bar Examiners*, 454 F.Supp. 4, 6 (E.D.Va. 1978), *aff'd* 598 F.2d 1345 (4th Cir.1979); *Powell v. Nigro*, 601 F.Supp. 144 (D.D.C. 1985). The court therefore concludes that with respect to plaintiff's claims regarding the action of the Board of Bar Admissions on plaintiff's application, this court lacks subject matter jurisdiction. However, just as in *Feldman*, this court does have subject matter jurisdiction to consider the general constitutional challenges to the state statute and the bar admission rule requiring an applicant to be a graduate of an ABA approved law school.

### IMMUNITY

█ In her complaint in this cause, plaintiff requests an award of money damages pursuant to 42 U.S.C. § 1983 for violation of her constitutional rights. Pendent state law causes of action are also alleged; namely, trespass to chattel, conversion, misrepresentation and fraud. Defendants' answer and motion for summary judgment raise as an affirmative defense the state's immunity from suit guaranteed under the Eleventh Amendment. *Pennhurst State*

*School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Cory v. White*, 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982); *Edelman v. Jordan*, 415 U.S. 651, 666, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974); *Hawaii v. Gordon*, 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963) (per curiam); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed.2d 389 (1945). The State correctly reasons, pursuant to the authorities cited above, that when relief sought nominally against an officer of the state would operate in fact against the sovereign in that any such retroactive relief would be paid from the state treasury, the Eleventh Amendment bars recovery. *Hawaii v. Gordon*, 373 U.S. at 58, 83 S.Ct. at 1052; *Edelman v. Jordan*, 415 U.S. at 667, 94 S.Ct. at 1357; *Karpovs v. State of Miss.*, 663 F.2d 640 (5th Cir.1981). The bar extends as well to pendent state law claims which request retroactive relief. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. at ——, 104 S.Ct. at 911, 79 L.Ed.2d at 82. However, by "Motion to Amend Pleadings" filed with this court on January 3, 1985, plaintiff deleted her prayer for $11,000 in money damages. Although this pro se plaintiff did not file an amended complaint with this court, by logical inference the voluntary dismissal of her money damage claims also worked a dismissal of her pendent state law causes of action. Under *Pennhurst*, such tort damages would not be recoverable against the state regardless of whether plaintiff intended to drop her state law claims. Thus, in its present posture this cause presents a claim for injunctive and declaratory relief against state officials charged with executing the mandates of an allegedly unconstitutional statute.

A critical exception to the Eleventh Amendment immunity of a state arises when a plaintiff seeks to enjoin a state official from enforcing an allegedly unconstitutional state law. Under the well-established principle of *Ex parte Young*, 209 U.S. 123, 160, 28 S.Ct. 441, 454, 52 L.Ed.

714 (1908), a state official enforcing an unconstitutional state law is "stripped of his official or representative character and subjected to the consequences of his official conduct." The theory underlying *Ex parte Young*, is that since the state law is unconstitutional and therefore "void", the Eleventh Amendment does not "impart to [the officer] any immunity from responsibility to the supreme authority of the United States." *Id.* A federal court may award injunctive relief against such offending state official so long as the relief is prospective in nature, but may not award retroactive relief in the form of money damages. *Edelman v. Jordan,* 415 U.S. 651, 667, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974); *Sessions v. Rusk State Hospital,* 648 F.2d 1066 (5th Cir.1981); *Karpovs v. State of Mississippi,* 663 F.2d 640 (5th Cir.1981). Declaratory relief is likewise available against a state official without implicating Eleventh Amendment immunity. *Gay Student Services v. Texas A & M University,* 612 F.2d 160 (5th Cir.1980), *reh. denied* 620 F.2d 300, *cert. denied* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495.

▮▮ The Mississippi Board of Bar Admissions clearly qualifies as an arm of the state for Eleventh Amendment purposes. *O'Connor v. State of Nevada,* 686 F.2d 749 (9th Cir.1982), *cert. denied* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633. However, because the instant case presents only claims for prospective injunctive and declaratory relief against individual state officials, the defense of Eleventh Amendment immunity is unavailable. A suit challenging the constitutionality of a state official's action, which is the gravamen of plaintiff's action in its present posture, is not a suit against the state for Eleventh Amendment purposes. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. at ——, 104 S.Ct. at 911, 79 L.Ed.2d at 82. Therefore, plaintiff's present action is not barred by the Eleventh Amendment.

## VOID FOR VAGUENESS

Plaintiff makes repeated allegations that the provisions relating to qualifications of bar applicants in Rule V of the *Rules Governing Admission to the Mississippi State Bar* are unconstitutionally vague. In her pleadings, plaintiff contends that she was qualified under the version of Rule V that was sent to her in July 1983 when she made application to take the bar examination. She further alleges that the "only way to give reasonable meaning to the requirements of the statute" is to read the individual substantive paragraphs of the rule as establishing separate requirements which, upon satisfaction of one or the other, qualifies the applicant to take the examination. Because Rule V does not expressly state that each of its separate requirements must be individually fulfilled before an applicant is qualified, and because plaintiff qualified under one of the substantive paragraphs but was still rejected, plaintiff avers that the entire rule is "void for vagueness."

Rule V reads in pertinent part:

An application for admission to the bar by examination may be filed by an individual who:

A. is 21 years of age

B. has received a bachelors degree from an accredited college or university or has received credit for the requirements of the first (3) years of college work from a college or university offering an integrated six-year prelaw and law course, and has completed his law course at a college or university offering such an integrated six-year course. However, an applicant who has already begun the general course of study of law as of November 1, 1979, either in a law school or under the supervision of a Mississippi lawyer shall submit proof that he has successfully completed two (2) full years of college work.

C. has successfully completed, or prior to taking the examination will complete, a general course of study of law in a law school which is provisionally or fully approved by the section on Legal Education and Admission to the Bar of the American Bar Association. Before being permitted to sit for an examination, an appli-

cant must file with the board a diploma or certificate from such school evidencing the satisfactory completion of such course. However, an applicant who, as of November 1, 1981, is or was previously enrolled in a law school in active existence in Mississippi for more than ten (10) years prior to the date of application shall be eligible for examination for admission; provided that such an applicant must graduate prior to November 1, 1984.

Plaintiff received a bachelor's degree from the University of Southern California. After teaching in the California school system for a number of years, she entered the National University School of Law. National has never received ABA accreditation. Plaintiff received her degree from National in June 1981. It appears that National had an integrated program as defined in Rule V(1)(B) at the time plaintiff graduated. Thus, plaintiff claims that she was qualified to take the Mississippi bar examination in February 1984 by the apparent exception to the ABA-accreditation requirement contained in Rule V(1)(B). To the extent she was misled in placing sole reliance on Rule V(1)(B), plaintiff claims the entire rule is "void for vagueness."

Defendants assert that Rule V(1)(B) is an undergraduate requirement which must be read in conjunction with the ABA accreditation requirement of Rule V(1)(C). Rule V(1)(B), it is contended, merely provides more than one option for an applicant to satisfy the requirement of an undergraduate degree and cannot be read separately from Rule V(1)(C) to provide an express exception to the requirement of a degree from an ABA-accredited law school. Furthermore, defendants state that any vagueness or uncertainty contained in Rule V is made clear by reference to the statutory requirements set out in Miss.Code Ann. § 73-3-2 (Supp.1984) (amended 1983), which reads in pertinent part:

(2) Qualifications. Each applicant for admission to the bar, in order to be eligible for examination for admission, shall be at least twenty-one (21) years of age, of good moral character, and shall present to the board of bar admissions satisfactory evidence:

(a) That he has successfully completed the general course of study of law in a law school which is provisionally or fully approved by the section on legal education and admission to the American Bar Association, and that such applicant has received a diploma or certificate from such school evidencing the satisfactory completion of such course. However, an applicant who, as of November 1, 1981, is or was previously enrolled in a law school in active existence in Mississippi for more than ten (10) years prior to the date of application shall be eligible for examination for admission; provided that such an applicant must graduate prior to November 1, 1984;

(b) That he has notified the board of bar admissions in writing of an intention to pursue a general course of study of law under the supervision of a Mississippi lawyer prior to July 1, 1979, and in fact began study prior to July 1, 1979, and who completes the required course of study prior to November 1, 1984...; or

(c) That *in addition to complying with either of the above requirements*, he has received a bachelor's degree from an accredited college or university or that he has received credit for the requirements of the first three (3) years of college work from a college or university offering an integrated six-year prelaw and law course, and has completed his law course at a college or university offering such a six-year course. However, applicants who have already begun the general course of study of law as of November 1, 1979, either in a law school or under the supervision of a Mississippi lawyer shall submit proof he has successfully completed two (2) full years of college work. (emphasis added).

Plaintiff erroneously claims that the language "in addition to complying with either of the above requirements" was added in the 1983 amendment to Miss.Code Ann.

§ 73–3–2. In point of fact, that language was part of the original legislation approved by the Mississippi Legislature on April 16, 1979. *See Mississippi Laws*, 1979, ch. 486 §§ 1–8; re-enacted and amended, Laws, 1983, ch. 457, § 1 eff. from and after July 1, 1983. The 1983 amendment to Miss.Code Ann. § 73–3–2 only deleted the Mississippi residency requirement for bar applicants.[7] The remaining sections of § 73–3–2, specifically § 73–3–2(2)(c) relating to graduates from six-year integrated programs, were unaltered by the 1983 amendment.

Plaintiff's vagueness claims must fail. As a general proposition, the void-for-vagueness doctrine demands that a statute define with sufficient definiteness the particular conduct proscribed, or in this case required, so that an ordinary person of common intelligence can understand what is required of him and in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983); *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). The more important aspect of the vagueness doctrine is not actual notice but the requirement that the statute provide minimal guidelines to govern conduct sufficient to avoid vesting complete discretion in the entity enforcing the statute. *Kolender*, 461 U.S. at 357, 103 S.Ct. at 1858, 75 L.Ed.2d at 909, *Smith v. Goguen*, 415 U.S. 566, 574, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974).

In a facial vagueness challenge against a statute regulating a business or economic activity, the burden of proof is on the complainant to "demonstrate that the law is impermissibly vague in all of its applications." *Village of Hoffman Estates*, 455 U.S. at 497, 102 S.Ct. at 1193. An individual may not make a facial challenge for vagueness on grounds that the statute requires him to conform his conduct to an "imprecise but comprehensible normative standard." *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971); *Ferguson v. Estelle*, 718 F.2d 730, 735 (5th Cir.1983). Rather, a vagueness challenge is "appropriate only when no standard of conduct is specified at all, or when the statute impermissibly delegates basic policy matters to officials charged with enforcement for resolution on an ad hoc and subjective basis, with attendant dangers of arbitrary and discriminatory application." *Ferguson*, 718 F.2d at 735; *Grayned*, 408 U.S. at 108–09, 92 S.Ct. at 2298–99; *Shamloo v. Mississippi State Board of Trustees, Etc.*, 620 F.2d 516, 523 (5th Cir.1980); *Hirschkop v. Snead*, 594 F.2d 356, 371 (4th Cir.1979).

"The most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Village of Hoffman Estates*, 455 U.S. at 499, 102 S.Ct. at 1193; *Grayned*, 408 U.S. at 109, 92 S.Ct. at 2299. Thus, economic and business regulations are subject to a less stringent vagueness test because the subject matter of such regulations is more narrow, and to prevail on vagueness grounds there must be a showing that the statute is vague in all its applications. *Village of Hoffman Estates*, 455 U.S. at 497, 102 S.Ct. at 1192; *Tobacco Accessories, Etc. v. Treen*, 681 F.2d 378, 382 (5th Cir.1982).

**7.** Plaintiff makes a series of allegations intended to void the operation of § 73–3–2(2)(c) as to her application: that it was part of the 1983 amendment to the statute; that such amendment was "unauthorized"; that she had no notice of the "unauthorized" amendment when she made application in July 1983; that the amendment was added to clarify the "vague" requirements of Rule V, *Rules Governing Admission to the Mississippi State Bar*; and that the amended statute cannot be applied retroactively to her. Because it is clear that the 1983 amendment only deleted the residency requirement and the remaining provisions were unaltered, this court finds plaintiff's claims as to the amendment groundless.

■ It is unnecessary for the court to specifically define the nature of the regulation at issue here since it is clear that the statute and rule meet the requirements of fair warning and just enforcement. The statute, Miss.Code Ann. § 73–3–2, states in precise terms the requirements which must be met by an applicant. Prominent among these requirements is that the applicant present evidence of having received a degree from an ABA-accredited law school. This provision has been a part of the statute since its enactment in 1979, as has the clarifying language at the beginning of § 73–3–2(2)(c) offering alternatives for meeting the undergraduate degree requirement *"in addition to complying with"* (emphasis added) the requirement of a degree from an ABA-accredited law school. Moreover, the statutory guidelines vest no discretion in the Board of Bar Admissions in enforcing the ABA-accreditation requirement. The statute does not offer the Board an opportunity to enforce its requirements on a subjective basis, and this court finds that the statute was sufficiently clear to offer applicants fair notice of its various requirements at least as early as 1980, some three years before plaintiff made application.

■ Rule V of the *Rules Governing Admission to the Mississippi State Bar* presents a more difficult vagueness question. Plaintiff alleges that she relied on Rule V(1)(B) in making application to take the Mississippi bar exam and that she had no notice of the statute. The clarifying "in addition to" language of the statute is not found in Rule V. Also, Rule V changes the placement of the statutory provisions to present the applicant with a confusing arrangement of the various requirements. Nothing in the version of Rule V sent to the plaintiff in 1983 specifically indicates that each of the separate requirements must be met by an applicant. However, while this court agrees with plaintiff that Rule V in its present form is somewhat confusing, such imprecision is not a sufficient ground for declaring the entire Rule unconstitutionally vague. Plaintiff cannot show that the Rule is "impermissibly vague

in all of its applications." *Village of Hoffman Estates*, 455 U.S. at 497, 102 S.Ct. at 1193. Read in isolation, as plaintiff asserts it should be "to give reasonable meaning to the requirements of the statute," Rule V(1)(B) would seem to require only a bachelor's degree from an accredited college *or* a degree from a college or university offering a six-year integrated course to qualify an applicant for the bar exam. The requirement of a law degree of any sort would be merely an alternative to qualification if the separate and independent effect urged by plaintiff is conferred on Rule V(1)(B). Such construction of the Rule V requirements is illogical. This court cannot agree with plaintiff that Rule V(1)(C), which states the requirement of a degree from an ABA-accredited law school, is mere surplusage if the applicant can qualify under Rule V(1)(B).

■ Plaintiff lastly alleges that the facial vagueness of Rule V inhibits the exercise of her constitutionally protected freedom of association. The particular association from which plaintiff is barred through the operation of Rule V is only generally averred, but it thematically relates to her choice of law schools. Plaintiff asserts that "freedom to associate with a non ABA law school pursuant to a legal education and freedom of ideas are basic fundamental First Amendment rights." (Plaintiff's reply brief at 6). This court does not consider such associations to be inhibited by the requirements of Rule V or § 73–3–2; nor does it deem such associations to fall within the particular protection provided by the Supreme Court in its leading freedom-of-association cases. *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Law Students Research Council v. Wadmond*, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971). The resolution of this issue basically turns on whether the ABA-accreditation requirement serves a legitimate state interest, which will be discussed infra. For vagueness purposes, this court finds that the ABA-accreditation requirement of Rule V and § 73–3–2 does not

inhibit plaintiff's exercise of the constitutionally protected freedom of association.

Rule V and § 73–3–2 do not pose the dangers of improper notice or arbitrary and discriminatory enforcement that would require this court to declare that the guidelines for qualification of applicants are void for vagueness. Agreeing with plaintiff that Rule V is imprecise is not enough to void the rule and the statute. Since the statute, with its clearer enunciation of the requirements, was extant in its present form—save the residency requirement—when plaintiff made application in July 1983, and since the ABA-accreditation requirement vests no discretion in the defendants as to its enforcement, this court is compelled to conclude that Rule V is not unconstitutionally vague.

### EQUAL PROTECTION

Plaintiff raises a myriad of equal protection claims in her various pleadings. Fairly summarized, these claims include: the Board of Bar Examiners maintains a pattern and practice of invidious racial discrimination by enforcing the qualification requirements of Rule V and Miss.Code Ann. § 73–3–2, which discriminatory practices were applied to plaintiff (a white female of the Jewish faith) because she attended a non-ABA-accredited law school which supports racial integration; the requirement of a degree from an ABA-accredited law school has a disproportionate impact on black applicants, thereby limiting the access of Mississippi blacks to the courts; the denial of plaintiff's application was arbitrary, capricious and unreasonable; the provisions of Rule V and Miss.Code Ann. § 73–3–2 relating to the qualifications of "preceptors" and graduates of the Mississippi College School of Law (formerly the Jackson School of Law) prior to the date on which that school received accreditation violate the Equal Protection Clause of the Fourteenth Amendment in that one class of applicants is favored over another; the statutory guidelines discriminate against non-ABA-accredited law school graduates; limiting qualified applicants to those with degrees from ABA-accredited law schools deprives plaintiff of a "fundamental right to livelihood"; and less restrictive means are available to the state in pursuing its interests.

At the outset, the question before this court is what "burden of justification the [challenged] classification ... must meet." *Zablocki v. Redhail,* 434 U.S. 374, 384, 98 S.Ct. 673, 680, 54 L.Ed.2d 618 (1978), quoting *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); *Pappanastos v. Bank of Trustees, Etc.,* 615 F.2d 219, 220 (5th Cir.1980). In order to be entitled to the "strict scrutiny" standard of judicial review, plaintiff must show that the challenged classification "trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion or alienage ..." *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976); *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Plaintiff is not a member of any suspect class as such has been defined by the United States Supreme Court. *See San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).[8] Nor is the right to practice law a "fundamental right" upon which the state may not infringe absent a compelling justification. *Potter v. New Jersey Supreme Court,* 403 F.Supp. 1036, *aff'd* 546 F.2d 418 (3rd Cir.1975); *see also Pappanastos v. Board of Trustees,* 615 F.2d at 221 (admission to graduate course of law study in taxation is not "basic civil right of man," thus limiting admission to only those with degrees from ABA-accredited law

8. Plaintiff lacks standing to assert the "generalized grievances" of black Mississippians in having greater access to the Mississippi courts. Such grievances are shared in substantially equal measure by a large class of Mississippi citizens, black and white, and plaintiff may not arrogate to herself the legitimate legal interests of third parties and assert those interests as her own. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 483, 102 S.Ct. 752, 764, 70 L.Ed.2d 700 (1982).

schools is constitutional, quoting *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed.2d 1655 (1942)). Therefore, the proper standard of judicial review of this allegedly unequal government action is the rational-connection test. *Califano v. Aznavorian*, 439 U.S. 170, 99 S.Ct. 471, 58 L.Ed.2d 435 (1978).

Under the rational-connection analysis, the challenged unequal treatment is justified if the state can prove that such treatment was rationally connected to a legitimate state interest. *New York City Transit Authority v. Beazer*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979). Where the unequal treatment is the product of legislation, as is the case here, federal courts "presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *Nolan v. Ramsey*, 597 F.2d at 579, quoting *New Orleans v. Dukes*, 427 U.S. at 303, 96 S.Ct. at 2517. There is no requirement that the state interest behind the classification be precisely enunciated by the Legislature, nor is the Legislature under a constitutional duty to choose the best means to further the legitimate state interest. *New Orleans v. Dukes*, 427 U.S. at 303, 96 S.Ct. at 2517; *New York City Transit Authority v. Beazer*, 440 U.S. at 592, 99 S.Ct. at 1369; *Nolan v. Ramsey*, 597 F.2d at 579.

■ A long line of cases from various jurisdictions have upheld the ABA-accreditation requirement as not violative of equal protection. Such requirement comports with the state's legitimate interest in controlling and regulating the licensing of attorneys who practice within its boundaries. As was stated in the important case of *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975),

> We recognize that the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practioners and regulating the practice of professions.

In *Hackin v. Lockwood*, 361 F.2d 499 (9th Cir.1966), *cert. denied*, 389 U.S. 143, 88 S.Ct. 325, 19 L.Ed.2d 347 (1967), plaintiff made a direct equal protection attack on the ABA-accreditation requirement of the State Bar of Arizona. The Ninth Circuit affirmed the district court's grant of defendant's motion to dismiss, stating,

> [W]hatever the various states, in their respective wisdom, may require before allowing the taking of bar examination— so long as they are applicable to every citizen alike, it should be of no concern to the federal courts ... We conclude that the fundamental question here is whether Rule IV, Section 6 of the Rules Pertaining to Admission of Applicants to the State Bar of Arizona is 'arbitrary, capricious and unreasonable.' We conclude an educational requirement of graduation from an accredited law school is not.

361 F.2d at 504. *See also, Santos v. Alaska Bar Association*, 618 F.2d 575 (9th Cir. 1980); *Lombardi v. Tauro*, 470 F.2d 798 (1st Cir.1972), *cert. denied* 412 U.S. 919, 93 S.Ct. 2734, 37 L.Ed.2d 145 (1973); *Kadans v. Collins*, 441 F.2d 657 (9th Cir.1971), *cert. denied* 404 U.S. 1007, 92 S.Ct. 672, 30 L.Ed.2d 656 (1972); *Moore v. Supreme Court of South Carolina*, 447 F.Supp. 527 (D.S.C.1977), *aff'd* 577 F.2d 735 (4th Cir. 1978), *cert. denied* 439 U.S. 984, 99 S.Ct. 574, 58 L.Ed.2d 655 (1979); *Ostroff v. The New Jersey Supreme Court*, 415 F.Supp. 326 (D.N.J.1976); *Harris v. Louisiana State Supreme Court*, 334 F.Supp. 1289 (E.D.La.1971).

In *LaBossiere v. Florida Board of Bar Examiners*, 279 So.2d 288 (Fla.1973), the Florida Supreme Court clearly enunciated the rationale underlying the ABA-accreditation requirement:

> We were persuaded to follow the American Bar Association standards relating to accreditation of law schools because we sought to provide an objective method of determining the quality of the educational environment of prospective attorneys. This was deemed especially necessary be-

cause of the rapid growth in the number of educational institutions awarding law degrees. We wished to be certain that each of these many law schools provided applicants with a quality legal education, but we were unequipped to make such a determination because of financial limitations and the press of judicial business. 279 So.2d at 289. *See also Rosenthal v. State Bar Examining Committee*, 116 Conn. 409, 165 A. 211 (1933); *In re Eisenson*, 272 So.2d 486 (Fla.1972); *In re Application of Bryan M. Hansen to write the Minnesota Bar Examination*, 275 N.W.2d 790 (Minn.1978); *In re Batten*, 83 Nev. 265, 428 P.2d 195 (1967); *In re Lorring*, 75 Nev. 330, 340 P.2d 589 (1959); *Henington v. State Board of Bar Examiners*, 60 N.M. 393, 291 P.2d 1108 (1956); *Application of Schatz*, 80 Wash.2d 604, 497 P.2d 153 (1972).

This court concludes, therefore, that the statutory requirement that applicants for the Mississippi bar examination present evidence of having received a degree from an ABA-accredited law school is not arbitrary, capricious and unreasonable. The requirement is substantially related to the interest of the state in ensuring the quality of the legal training of prospective lawyers attempting to practice within its boundaries. Because reliance on the ABA standards of accreditation is a reasonable and nondiscriminatory means of advancing such state interest, the statutory requirement lacks the indicia of arbitrariness and capriciousness which would inhere if the requirement applied only to nonresidents of Mississippi, or if the requirement were not absolute in nature. Likewise, the "unequal treatment" or the "classification" between ABA-accredited law school graduates and non-ABA-accredited law school graduates is justified under the rational-connection test as such serves the interest of the state in arriving at an objective measure of the quality of legal training of its prospective lawyers.

▆ Plaintiff also challenges on equal protection grounds the exceptions provided in Miss.Code Ann. § 73–3–2 for three classes of individuals: (1) those who, as of November 1, 1981, were enrolled in a law school which had been in active existence in the State of Mississippi for more than ten years, provided that such individuals must have graduated before November 1, 1984; (2) those who, before July 1, 1979, began and so notified the Board in writing that they were pursuing a general course of the study of law under the supervision of a Mississippi attorney and who completed such course of study prior to November 1, 1984; (3) those who were enrolled at the University of Mississippi School of Law on November 1, 1981, graduated before November, 1984 and were afforded diploma privileges as authorized by Miss.Code Ann. § 73–3–33. Plaintiff alleges that these excepted classifications constitute an arbitrary, capricious and unreasonable determination on the part of the Legislature which has no rational connection to any legitimate state interest.

This court disagrees. The Legislature could reasonably have relied on its own knowledge, combined with that of the Board of Bar Admissions and the Supreme Court, in determining the quality of the legal education offered by the Mississippi College School of Law, formerly the Jackson School of Law. The Mississippi College School of Law was the one non-ABA accredited law school in the state at the time the statute, § 73–3–2, was promulgated. The practice of the Board of Bar Admissions prior to the statute's enactment in 1979 was to allow graduates of the Mississippi College School of Law to sit for the bar examination upon graduation. Prior practice also allowed "preceptors," those who studied the law under a licensed Mississippi attorney, to sit for the examination. The Legislature could also have reasonably relied on its knowledge of the Mississippi attorneys offering guidance to "preceptors" studying under them. The significant fact is, however, that the three exceptions provided in § 73–3–2 were self-terminating as of November 1, 1984. The statute was intended to be transitional in nature, and the Legislature could, in its dis-

cretion and free from constitutional attack, allow individuals who were enrolled or planned to immediately enroll in any of these programs to finish their studies and be permitted to sit for the bar examination or be admitted to the bar under conditions as previously provided. It is noteworthy that the three exceptions were not limited to Mississippi residents and that the requirement of graduation from an ABA-accredited law school applies with equal force to all applicants from and after November 1, 1984.

The constitutionality of the diploma privilege has been directly addressed by the federal courts in Mississippi. *Shenfield v. Prather*, 387 F.Supp. 676 (N.D.Miss.1974). In *Shenfield*, Judge William C. Keady, relying on the rigid curriculum and the Mississippi-law orientation of the University of Mississippi School of Law, concluded that the state's Legislature had a reasonable basis for exempting University of Mississippi law graduates from taking the bar examination. *Id.* at 688. *See also Huffman v. Montana Supreme Court*, 372 F.Supp. 1175 (D.Mont.1974).

In sum, the Equal Protection Clause of the Fourteenth Amendment does not mandate that the Board of Bar Admissions adopt a standardless set of guidelines for determining applicant qualifications simply because such guidelines, in operation, discriminate against those who do not comply. The requirement that applicants must be graduates of an ABA-accredited law school is rationally related to the state's legitimate interest in ensuring that applicants to the bar have uniform quality legal education. Thus, plaintiff's equal protection claims must also fail.

### DUE PROCESS

■ Plaintiff asserts denial of her right to due process guaranteed by the Fifth and Fourteenth Amendments because the denial of her application was predicated upon the ABA-accreditation requirement. Such claim has been addressed by a number of courts and found to be groundless. *See Leis v. Flynt*, 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979); *Moore v. Supreme Court of South Carolina*, 447 F.Supp. 527 (D.S.C.1977), *aff'd* 577 F.2d 735 (4th Cir. 1978), *cert. denied* 439 U.S. 984, 99 S.Ct. 574, 58 L.Ed.2d 655 (1979); *Ostroff v. New Jersey Supreme Court*, 415 F.Supp. 326 (D.N.J.1976); *Potter v. New Jersey Supreme Court*, 403 F.Supp. 1036 (D.N.J. 1975); *aff'd* 546 F.2d 418 (3rd Cir.1976). Plaintiff alleges a deprivation of her liberty interests but does not contend that the denial of her application has implicated a liberty interest by the stigmatizing effect of failing the bar admission qualifications. *Nolan v. Ramsey*, 597 F.2d at 580. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). This case is thus distinguishable from those due process cases in which "an individual is singled out and denied the right to pursue a profession based upon personal characteristics". *Nolan v. Ramsey*, 597 F.2d at 580. *Willner v. Committee on Character*, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). Plaintiff also cannot prevail on her assertion that she had a cognizable property interest in pursuing her chosen profession which was violated by the ABA-accreditation requirement. Such requirement is only a condition precedent to pursuing the practice of law in Mississippi. Furthermore, as the determination to require bar applicants to present evidence of graduation from an ABA-accredited law school was made by the Legislature and was not directed at the competency of plaintiff or any other particular individuals, plaintiff cannot assert a valid property interest. *Nolan v. Ramsey*, 597 F.2d at 580; *Bi-Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915). Lastly, federal courts have long since abandoned the practice of scrutinizing the wisdom of state laws regulating business conditions under the substantive due process analysis. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1954). The qualification

requirements of the Mississippi Board of Bar Admissions did not in any way violate plaintiff's due process rights.[9]

## SHERMAN ANTITRUST ACT

■ Plaintiff contends that § 73–3–2 violates the Sherman Antitrust Act in that such statute limits the supply of lawyers in Mississippi and is a form of restraint of trade. (Complaint at 7). Specifically, plaintiff alleges that the ABA-accreditation requirement is a form of monopolistic practice proscribed by the Sherman Antitrust Act in that it is intended to limit the supply of lawyers within the state and is therefore a "restraint of trade" and anticompetitive in nature. Peripheral to these antitrust claims is plaintiff's contention that ABA accreditation provides an arbitrary measure of the competence of law school graduates applying to take the bar examination, and that the requirement creates a privileged class which excludes many competent and fit persons. In order to escape the precedential effect of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), plaintiff avers that "no state sovereignty is involved with the unauthorized amendment to the statute ... § 73–3–2 (Sept.1983)." This claim is patently inaccurate.

In *Parker v. Brown*, the Supreme Court enunciated the state law exemption from the operation of the Sherman Antitrust Act, stating:

We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature. In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress.

317 U.S. at 350–351, 63 S.Ct. at 313–314.

In a recent case, *Hoover v. Ronwin*, 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984), the Supreme Court reiterated the *Parker* state law exemption and clarified the scope of the exemption as to legislative acts:

Thus, under the court's rationale in *Parker*, when a state legislature adopts legislation, its actions constitute those of the state ... and *ipso facto* are exempt from the operation of the antitrust laws.

104 S.Ct. at 1995.

The ABA-accreditation requirement was contained in the original language of § 73–3–2, enacted by the Mississippi Legislature in 1979. *Mississippi Laws*, 1979, ch. 486 §§ 1–8. The *Rules Governing Admission to the Mississippi State Bar* were derived from the statute and were adopted by the Mississippi Supreme Court. Vesting enforcement of the statutory requirements in the Mississippi Board of Bar Examiners is not an "unconstitutional transfer of public sovereignty to a private organization," *Application of Schatz*, 80 Wash.2d 604, 497 P.2d 153 (1972), sufficient to remove the statutory requirement from the state law exemption. The Board is not a "private organization" but an arm of the state empowered by the legislature to enforce the statutory requirements. Nor is the ABA-accreditation requirement used to "control competition" in violation of the Sherman Act. *Chaney v. State Bar of California*, 386 F.2d 962, 965 (9th Cir. 1972); *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). Rather, the requirement is neutral on its face and was intended to serve the state's interest in regulating the quality of lawyers admitted to practice before the bar. The statutory requirement was mandated by the Mississippi Legislature and as such represents an act of the state in its

---

**9.** Plaintiff's allegation that her right to "procedural due process" under the Fourteenth Amendment was violated because she had "no notice of the unauthorized amendment to ... § 73–3–2" in 1983 is wholly without merit. The statutory provisions pertinent to plaintiff's claim were in place as of 1979; thus plaintiff's claim of lack of notice is groundless.

sovereign capacity. The Supreme Court and the Mississippi Board of Bar Admissions are engaged in activities directed by the Legislature. Such state actions are therefore exempt from operation of the antitrust laws under the well-recognized rule of *Parker v. Brown* and its progeny.

## PRIVILEGES AND IMMUNITIES

Plaintiff's last substantive claim is that the ABA-accreditation requirement of § 73–3–2 and Rule V violates the Privileges and Immunities Clause of the United States Constitution, Art. 4 § 2. Plaintiff contends that she was qualified to take the bar examination in California following her graduation from the National University School of Law, but that her husband received military orders to report to the Meridian Naval Air Station. Plaintiff states that she has no intention of becoming a resident of Mississippi and that, at all times pertinent hereto, she remained a resident of California. The alleged violation is premised on the notion that the Privileges and Immunities Clause confers upon an individual who is qualified to take the bar examination in one state the right to take the bar examination in every other state. It is further alleged that since certain classes of individuals who attended the Mississippi law schools or studied under Mississippi attorneys were given special privileges exempting them from the ABA-accreditation requirements of the statute, such requirement constitutes a discriminatory residency requirement which must be shown to promote a compelling state interest. *See Toomer v. Witsell,* 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Supreme Court of New Hampshire v. Piper,* —— U.S. ——, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985).

Two significant points are worthy of note at the outset: (1) the ABA-accreditation requirement is in no sense a residency requirement, and it presently applies with equal force to both residents and non-residents of Mississippi; (2) the classification here is between graduates of ABA-accredited and non-ABA-accredited law schools, and the fundamental right of interstate travel, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), is not implicated in such classification. *Moore v. Supreme Court of South Carolina,* 447 F.Supp. at 530.

In *Supreme Court of New Hampshire v. Piper,* the United States Supreme Court addressed the rule of the New Hampshire Supreme Court limiting bar admission solely to state residents and found that the rule violated the Privileges and Immunities Clause. Central to such finding was the court's conclusion that "the right to practice law is protected by the Privileges and Immunities Clause" *Id.* —— U.S. at ——, 105 S.Ct. at 1278, thus triggering a heightened standard of judicial scrutiny. After summarizing the state's several justifications for the residency requirement, the court stated, "we find that none of these reasons meets the test of 'substantiality,' and that the means chosen do not bear the necessary relationship to the state's objectives." Id. However, with specific regard to the court's decision on the due process challenge to a state's admission requirements in *Leis v. Flynt,* 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979), the court in *Piper* made the following distinction:

> Our conclusion that Rule 42 (of the New Hampshire Supreme Court) violates the Privileges and Immunities Clause is consistent with *Leis v. Flynt,* 439 U.S. 438 [99 S.Ct. 698, 58 L.Ed.2d 717] (1979). In *Leis,* we held that a lawyer could be denied, without the benefit of a hearing, permission to appear *pro hac vice.* We concluded that the states should be left free to 'prescribe the qualifications for admission to practice and the standards of professional conduct for those lawyers who appear in its courts.' *Id.* at 442 [99 S.Ct. at 700]. Our holding in this case does not interfere with the ability of the states to regulate their bars. The non-resident who seeks to join a bar, unlike

the *pro hac vice* applicant, must have the same professional and personal qualifications required of resident lawyers.

—— U.S. at ——, 105 S.Ct. at 1278 n. 16.

The ABA-accreditation requirement provides a rational and relatively unrestricted means for ensuring the quality of a bar applicant's legal training. However, the court is of the opinion, based on the authorities cited above, that the Privileges and Immunities Clause is not implicated in the statutory requirement that bar applicants present evidence of a degree from an ABA-accredited law school. Equal treatment is accorded residents and nonresidents of Mississippi in the operation of § 73-3-2 and Rule V. Having concluded previously that the state was justified in providing limited and self-terminating exceptions to the statutory requirements for certain individuals who were in the process of qualifying for bar admission under prior practices—exceptions which themselves did not discriminate between residents and nonresidents—this court further concludes that the Privileges and Immunities Clause offers no constitutional protection for plaintiff in her attempt to void the ABA-accreditation requirement as to her application.

## CONCLUSION

This court concludes that plaintiff has no constitutional right to sit for the Mississippi bar examination without complying with the educational requirements of § 73-3-2 and Rule V. The ABA-accredition requirement is rationally related to the state's legitimate interest in ensuring that each applicant for the bar has a uniform quality legal education. Accordingly, the court is of the opinion that there are no genuine issues of material fact in existence to support plaintiff's constitutional claims, and therefore defendant's motion for summary judgment should be granted. It is unnecessary to consider the various pending motions filed by plaintiff. A separate judgment will be entered pursuant to the local rules.